**In re Kenneth L. GRIFFIN and Rhonda R. Griffin, Debtors.**

**No. 04 B 19670.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 26, 2004.

Kelly Johnson, Chicago, IL, for applicant.

## AMENDED MEMORANDUM OPINION

JACQUELINE P. COX, Bankruptcy Judge.

Before this Court is a Supplement to Application for Compensation of Debtor's Attorney ("Compensation Supplement") from Macey Chern & Diab, attorneys for the debtors, Kenneth L. and Rhonda R. Griffin. The Compensation Supplement summarizes the professional services rendered on behalf of the clients in connection with a vehicle redemption in their Chapter 7 bankruptcy case.

For the reasons stated herein, the application is DENIED.

The Court has jurisdiction over this matter, a core proceeding, pursuant to 28 U.S.C. § 157(b)(1)-(2)(A) and § 1334.

### Background

Debtors Kenneth L. and Rhonda R. Griffin engaged Macey Chern & Diab ("counsel") on February 7, 2004 to file and prosecute a Chapter 7 liquidation case. On that same day, the debtors paid a $100 retainer fee and signed an agreement to pay the balance of $1,050.00 in four installments before May 30, 2004. The debtors' counsel filed the voluntary Chapter 7 petition on May 20, 2004, containing a May 2, 2004 statement of intention indicating the debtors' intent to redeem a 2000 Toyota Camry. *Vol. Pet.* at Official Form 8. It later brought a motion to redeem the debtors' vehicle for $5,525, which this Court granted on June 17, 2004.[1] Counsel did

---

1. The estate trustee found the property to be valueless to the estate and abandoned it pur-

suant to § 554. The Camry was subject to a

not file any papers indicating whether or not it had received compensation for this motion or the source of such compensation, if any. The only compensation disclosed was the $1150 indicated in the original filing. At the hearing on the motion, the Court requested more detail on the fee arrangement underlying the redemption motion. The Court also requested a copy of the contract between the debtors and counsel for the prosecution of the Chapter 7 be submitted along with the Compensation Supplement.

On June 18, 2004, the Court received the "Supplement to Rule 2016(b) Attorney Compensation Statement" ("2016 Supplement") from counsel, showing a third party, 722 Redemption Financing, Inc., as the source of the funds. On June 30, 2004, the Court received the Compensation Supplement from counsel, detailing the time spent working on the redemption motion and stating a total compensation of $600. The Compensation Supplement indicates that 3 hours total were spent on the unopposed redemption motion; 0.5 hours were spent pre-petition, and 2.5 hours were spent post-petition. This filing also indicated the source of the compensation was 722 Redemption Funding, Inc., which extended a post-petition loan to the debtors to redeem their vehicle from Capital One Auto Finance's lien as well as to pay counsel the additional money the debtors owed them under the pre-petition contract for the instant Chapter 7 case. The February 7, 2004 retention contract indicates the clients will be charged additional fees for certain additional work, including $600 for redemptions on vehicles. *Contract* at item 7c.

### Conclusions of Law and Analysis

The Court must determine whether counsel can collect these requested fees

from either 1) the estate or 2) the debtors. It will also address additional disclosure and professional responsibility concerns.

### I. *Can counsel collect these requested fees from the estate?*

■ In *Lamie v. U.S. Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), the debtor (as a debtor-in-possession) retained an attorney to prosecute a Chapter 11 case on its behalf with the court's approval under § 327. Three months into the Chapter 11 case, the U.S. trustee in the case filed a motion to convert the case to a Chapter 7; the court granted the motion and appointed a case trustee pursuant to 11 U.S.C. § 701. This order terminated the debtor's status as a debtor-in-possession and its attorney's services under § 327, since the debtor-in-possession functions as a trustee only in the Chapter 11 context. 11 U.S.C. § 1107(a). The attorney continued to provide legal services to the debtor, however, without the trustee's authorization and then sought compensation under 11 U.S.C. § 330(a)(1) for legal services he provided to the debtor after the proceeding had been converted to a Chapter 7 bankruptcy.

The U.S. Supreme Court held that this attorney could not recover fees for this postconversion work because of the "plain language" of 11 U.S.C. § 330(a)(1), which states:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, [*sic*] a professional person employed *under section 327 or 1103—*
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional

---

lien in favor of Capital One Auto Finance in    the amount of $18,000.

person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1) (*emphasis added*). Under the Supreme Court's ruling, debtors' attorneys can only be compensated under § 330(a)(1) if the attorneys are employed by the trustee pursuant to § 327 (or by the debtor-in-possession in a Chapter 11).

Congress amended the Bankruptcy Code in 1994, prior to which § 330(a) permitted a court to "award to a trustee, to an examiner, to a professional person employed under section 327 ..., or to the debtor's attorney" compensation from the estate. After this amendment, the language of § 330(a)(1) permitted a court to "award [compensation] to a trustee, an examiner, a professional person employed under section 327 or 1103." Apparently, the post-amendment language is missing an "or," which "infects its grammar." *Id.*, 124 S.Ct. at 1028. The post-amendment language has also deleted the phrase "or to the debtor's attorney." The Supreme Court acknowledged that the current grammatical structure is probably an error and not an intentional change, but it further determined that the statute can be read in a "straightforward" manner, *id.*, 124 S.Ct. at 1030, showing deference to the supremacy of the legislature and an unwillingness to rescue Congress from its drafting errors. *Id.*, 124 S.Ct. at 1034 (quoting *United States v. Granderson*, 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994)).

■ In the instant case, the debtors filed a Chapter 7 and never held the powers of a trustee. Further, the trustee did not retain or otherwise authorize counsel to perform work related to the redemption motion. Therefore, counsel is not eligible for compensation from the estate under § 330. The Compensation Supplement does contain boilerplate language declaring that the "[a]pplicant has rendered substantial and valuable professional services on behalf of client and the estate." Redemption allows an individual debtor to remove a lien from tangible personal property intended primarily for personal, family, or household use by paying the lesser of the balance due or the value of the collateral. 11 U.S.C. § 722. Section 722 is clearly intended for the benefit of the individual debtor and not the estate because the debtor can successfully pursue such a motion only if the trustee has abandoned any potential equity in the property or the debtor has exempted the same. Thus, the trustee would have no reason to hire the debtor's counsel for this motion because redemption is valueless to the estate; the motion only has value to the debtor.[2]

## II. *Can counsel collect these requested fees from the debtors?*

■ Counsel has a pre-petition contract with the debtors for the above-mentioned installment payments and for other fees for additional services. When the debtors voluntarily filed for Chapter 7 on May 20, 2004, the pre-petition contract became a pre-petition claim against the estate. Simultaneously, an automatic stay prevented any creditors' attempts to "col-

---

**2.** Technically, the trustee could have an interest in litigating the value of the collateral in order to maximize it, thereby minimizing the unsecured portion of the lien and reducing the total unsecured claims. Each unsecured creditor could then potentially get more money. However, the effort involved in litigating the value of this collateral may make a total difference of one or two thousand dollars. In bankruptcy, where claims are usually paid at 0% to 30% of the dollar amount, this could be a pyrrhic victory which may reduce total unsecured claims by a few hundred dollars at most.

lect, assess, or recover" from the debtors on pre-petition claims. 11 U.S.C. § 362(a)(6). This stay will remain in effect until the case is closed or dismissed or a discharge is granted or denied. 11 U.S.C. § 362(c). Counsel is unable to pursue collection on this claim from the debtors individually while the stay is in effect. Similarly, if the debtors receive a § 727(b) discharge, pre-petition debts for legal fees, even for their own bankruptcy case, are subject to the discharge injunction of § 524. *Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125 (7th Cir.2003), *cert. denied*, ―― U.S. ――, 124 S.Ct. 2176, 158 L.Ed.2d 733 (2004).

In *Bethea*, the Chapter 7 debtors hired lawyers on retainer to prepare and prosecute their bankruptcy cases. The retainer was to be paid in installments over time, with some payments made pre-petition and some collected post-petition. The debtors ultimately received discharges. Later, the debtors found new counsel to challenge the bankruptcy attorneys' post-discharge collection of the agreed installment payments. The Seventh Circuit found that the retainer contract created a pre-petition, liquidated debt, that attorneys' fees are not among the debts excepted from discharge by § 523, and that § 329 does not create an unenumerated exception to the § 727(b) discharge.[3] *Id.* at 1127. The Seventh Circuit ordered the bankruptcy attorneys to repay the debtors any money collected after the discharge and any money collected while the automatic stay was in effect. *Id.* at 1129.

The Ninth Circuit had previously advanced the notion that the portion of the retainer reflecting work done during the bankruptcy is immune from discharge, while the portion reflecting pre-filing work would be discharged because a "claim" does not accrue upon agreement but upon performance; therefore, each retainer agreement can be shattered into multiple claims depending on when performance took place. *In re Hines*, 147 F.3d 1185 (9th Cir.1998).

Particularly relevant to the present Compensation Supplement is the fact that Judge Easterbrook expressly rejected this position. *Bethea*, 352 F.3d at 1128. Personal liability on the entire retainer agreement, as a pre-petition claim, is subject to discharge per § 727. *Id.* at 1128. Under the Bankruptcy Code, contract-based claims arise at the time the contract is entered into rather than upon subsequent events such as termination or performance. *In re Caldor, Inc.*, 240 B.R. 180, 192 (Bankr.S.D.N.Y.1999), *aff'd*, 266 B.R. 575 (S.D.N.Y.2001). " '[W]here the debtors' obligations stem from contractual liability, even a post-petition breach will be treated as giving rise to a prepetition liability where the contract was executed prepetition." *In re Chateaugay Corp.*, 102 B.R. 335 (Bankr.S.D.N.Y.1989) (quoting *In re Chateaugay Corp.*, 87 B.R. 779, 796 (S.D.N.Y.1988)); *In re Kotary*, 2000 Bankr.LEXIS 1566, at 6,7 (Bankr. N.D.N.Y.2000); *see also United States v. Gerth*, 991 F.2d 1428, 1433–34 (8th Cir. 1993).[4] Under the Bankruptcy Code, a con-

---

**3.** *Bethea* conflicts with a Ninth Circuit opinion to some extent. *See In re Hines,* 147 F.3d 1185 (9th Cir.1998). But, it is in harmony with an earlier Ninth Circuit opinion. *See In re Biggar,* 110 F.3d 685 (9th Cir.1997).

**4.** As the Eighth Circuit has stated:
[D]ependency on a postpetition event does not prevent a debt from arising prepetition.

"The character of a claim is not transformed from pre-petition to postpetition simply because it is contingent, unliquidated or unmatured when the debtor's petition is filed." *Braniff Airways,* 814 F.2d at 1036 (quoting *Stair v. Hamilton Bank of Morristown (In re Morristown Lincoln–Mercury, Inc.),* 42 B.R. 413, 418–19 (Bankr. E.D.Tenn.1984)). A debt can be absolutely

tract-based claim is a pre-petition claim if prior to filing the relationship between the debtors and the creditor contained all the elements necessary to create a right to payment under the relevant contract law. *In re Manville Forest Products,* 209 F.3d 125, 129 (2nd Cir.2000); *In re National Gypsum Co.,* 139 B.R. 397, 405 (Bankr. N.D.Tex.1992).

■ Because counsel began billing for the redemption motion on February 8, 2004 (the day after the contract was dated) and the debtors filed for bankruptcy on May 20, 2004, the elements necessary to create a right of payment under the relevant contract law occurred pre-petition. Thus, the claim resulting from the motion to redeem is a pre-petition contract-based claim. If the debtors receive a discharge, the discharge will seamlessly replace the automatic stay. In the meantime, the collection of any sums during bankruptcy is a violation of the automatic stay, and as such, the sums so collected must be refunded. *Bethea,* 352 F.3d at 1129.[5] Because of the stay, the application cannot be granted. This is the first independent basis for disgorgement.

### III. *Was counsel's disclosure of the compensation paid defective?*

■ In the instant case, 722 Redemption Funding, Inc. extended a post-petition loan to the debtors so they could pay their pre-petition legal debts to counsel (for both the bankruptcy petition and the redemption services). Counsel did not notify the Court of the additional revenue from

owing prepetition even though that debt would never have come into existence except for postpetition events. *See Sherman v. First City Bank of Dallas (In re United Sciences of Am., Inc.),* 893 F.2d 720, 724 (5th Cir.1990). *U.S. Through Agr. Stabilization and Conservation Service v. Gerth,* 991 F.2d 1428, 1433–34 (8th Cir.1993).

the redemption motion voluntarily. Only after the Court specifically requested this information did counsel provide it.

Section 329 provides in part:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, *whether or not such attorney applies for compensation under this title,* shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the *source of such compensation.*

11 U.S.C. § 329 *(emphasis added).* Section 329 is implemented by Bankruptcy Rule 2016(b), which states as follows:

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit ... the statement required by § 329 of the Code ... A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

Fed. R. Bankr.Pro.2016(b); *see also* N.D. Ill. Local Rule of Professional Conduct 83.51.2(f)(3). Section 329 of the Code and Rule 2016(b) are rooted in the fiduciary relationship between courts and attorneys. *In re Downs,* 103 F.3d 472, 479–80 (6th Cir.1996).

---

**5.** Ironically, in *Bethea* Macey, Chern, & Diab represented the Chapter 7 debtors in enforcing the automatic stay and discharge injunctions against their previous bankruptcy counsel. *Bethea v. Robert J. Adams & Associates,* 352 F.3d 1125, 1126 (7th Cir.2003)

The Bankruptcy Code as a whole is very concerned with conflicts of interest, defective disclosure, and excessive compensation. The Ninth Circuit decided a case involving violations of the disclosure requirements of both Rule 2014[6] and Rule 2016. *In re Park–Helena Corp.*, 63 F.3d 877 (9th Cir.1995). In the Chapter 11 bankruptcy, the debtor corporation's president wrote a personal check to retain the appellant law firm to file and prosecute the debtor's bankruptcy case. The law firm completed an application for employment pursuant to Rule 2014 and stated the retainer was paid by the debtor. The exact classification of the payment was somewhat unclear because the president had previously received a loan from the debtor, so the law firm argued that the personal check was in effect a payment from the debtor. When a creditor objected to the fee request by alleging, *inter alia*, violations of 11 U.S.C. § 329 as well as Bankruptcy Rules 2014 and 2016, the law firm finally disclosed the full details of its fee arrangement. The lower courts found that this failure to accurately describe the transaction constituted a violation of § 329 and Rule 2016 and denied all fees. In affirming, the Ninth Circuit specifically found the failure to disclose the tripartite fee arrangement in the initial application to be a violation of Rule 2016 and § 329.

While the appellant in *Park–Helena* was an applicant for employment under Rule 2014, the Ninth Circuit found not only a violation of Rule 2014 but also a violation of Rule 2016, explicitly discussing the duty of disclosure in relation to both rules. *Id.* at 879. Other courts recognize the duty of voluntary and complete compliance with Rule 2016(b) and § 329(a). *In re Redding*, 251 B.R. 547, 552, 553 (Bankr.W.D.Mo. 2000); *In re Bennett*, 133 B.R. 374, 378, 379 (Bankr.N.D.Tex.1991); *In re TJN, Inc.*, 194 B.R. 400, 403 (Bankr.D.S.C.1996); *In re Laferriere*, 286 B.R. 520, 526, 527 (Bankr.D.Vt.2002). Indeed, complete and accurate bankruptcy disclosures have concerned federal courts for over seventy years. *In re Rogers–Pyatt Shellac Co.*, 51 F.2d 988 (2nd Cir.1931). The Court is not required to "mine" or otherwise search for any potential violations of the applicable rule. *In re Roberts*, 75 B.R. 402, 410, 411 (D.Utah, 1987); *In re B.E.S. Concrete Products, Inc.*, 93 B.R. 228, 236, 237 (Bankr.E.D.Cal.1988).

Defective disclosure is not a minor matter, *B.E.S.*, 93 B.R. at 236, because a failure to provide the required disclosure alone justifies the bankruptcy court's denial of any or all fees requested. *Roberts*, 75 B.R. at 412–413; *see also In re Sixth Avenue Car Care Center*, 81 B.R. 628 (Bankr.D.Colo.1988); *In re Investment Bankers, Inc.*, 4 F.3d 1556, 1565 (10th Cir.1993); *accord In re Crayton*, 192 B.R. 970, 981 (9th Cir. BAP 1996); *In re Lewis*, 309 B.R. 597, 605 (Bankr.N.D.Okla.2004). A misstatement in a Rule 2014 application regarding third party affiliations is a material misstatement. *United States v. Gellene*, 182 F.3d 578, 588 (7th Cir.1999). If Rule 2014's disclosure requirements are the heart of the bankruptcy estate's administrative integrity, *id.* at 588, it is reasonable to infer that Rule 2016's disclosure requirements are similarly important. The disclosure requirements imposed by

---

**6.** Rule 2014, not directly applicable here, requires an applicant for employment by the trustee to fully disclose all connections with any parties in interest. The concepts included in discussions of Rule 2014's disclosure requirements should apply by analogy to a discussion of Rule 2016's disclosure requirements. Rule 2016(b) references § 329, which is concerned with the "source of the compensation." The debtor's attorney's requirement to disclose the source of the compensation is at least significantly related to the bankruptcy estate's concerns regarding complete disclosure and conflicts of interest.

§ 329 are mandatory, not permissive. *In re Investment Bankers*, 4 F.3d 1556, 1565 (10th Cir.1993); *Bennett*, 133 B.R. at 374, 378; *In re Laxague*, 1992 WL 389251, 1992 U.S.App. LEXIS 34114 (9th Cir.1992). The Tenth Circuit further explains:

> Accordingly, an attorney who fails to comply with the requirements of § 329 forfeits any right to receive compensation for services rendered on behalf of the debtor, *id.* at 379; *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 575 (Bankr.N.D.Tex.1986), and a court may order an attorney *sua sponte* to disgorge funds already paid to the attorney, *In re Saturley*, 131 B.R. 509, 522 (Bankr.D.Me.1991); *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 759 (Bankr. N.D.Tex.1988); *In the Matter of Chambers*, 76 B.R. 194, 195 (Bankr.M.D.Fla. 1987); *In re Chapel Gate*, 64 B.R. at 574, 575.

*In re Investment Bankers*, 4 F.3d at 1565.

The case at bar involves a tripartite arrangement where a third party made a post-petition loan to the debtors, and the proceeds of that loan were 1) to be paid to counsel for a pre-petition debt created by the initial retainer agreement and 2) to accomplish redemption of the 2000 Toyota Camry. This fact pattern is substantially similar to *In re Miller*, 312 B.R. 626 (Bankr.S.D.Ohio 2004). In *Miller*, the debtors received a post-petition loan from 722 Redemption Funding, Inc. to pay a pre-petition retainer agreement as well as to finance a redemption motion brought by Macey Chern & Diab. The true origin of the funds was a third party who will eventually be repaid the same amount out of the debtors' future income.

The Court does recognize that in certain situations, under Rule 2016(b) a debtor's attorney has 15 extra post-petition days to file supplemental disclosure of any "payment or agreement not previously disclosed." This safe-harbor provision would be applicable if the debtors' attorney would have had no reason to initially disclose the redemption-fee agreement within the first fifteen days of the bankruptcy case, making the "supplemental statement" necessary only when the debtor subsequently requires an extra post-petition service not seen as warranted at the time of filing the petition. To be sure, under counsel's retention agreement with the Griffins, the $600 redemption fee is an additional post-petition fee that, like several other fees relating to lien-avoidance and adversary proceedings, may or may not come into fruition. In the case at bar the disclosure should have been made earlier than the day after the Court granted the underlying redemption motion on June 17, 2004 and was forced to "mine" for information about the related fee structure; this post-petition work costing an additional $600 had been contemplated for some time. The debtors' counsel performed pre-petition redemption-related services during February and April leading up to the May 20, 2004 filing date, when the debtors filed their "statement of intention" to redeem the vehicle. Even going by the May 27 time–itemization entry showing the receipt of the final fax from the post-petition financier rather than by the May 20 petition date, the supplemental disclosure should have been made no later than June 11, 2004.

Failure to meet the disclosure requirements alone is grounds for disgorgement, as discussed *supra*. If counsel was not being paid from the proceeds of this loan, there would be no duty to disclose it under § 329. In the instant case, counsel was paid from such proceeds; therefore, Macey Chern & Diab's supplemental disclosure did not conform to the requirements of Rule 2016 or § 329. This is the second independent ground for disgorgement.

Unfortunately, proper disclosure in future cases may not avoid the restriction posed by the automatic stay.

### IV. *General Considerations*

The Court will briefly address several additional issues raised by the fees that 722 Redemption Funding, Inc. loans to Chapter 7 debtors for payment of their bankruptcy attorneys' fees, including professional responsibility considerations.

■ If compensation paid to any attorney representing a debtor in a bankruptcy case exceeds the reasonable value of such services, the court may cancel the agreement or order the amount considered excessive to be returned. 11 U.S.C. § 329(b). Counsel ran into this very problem in *Miller*, a case in which that court questioned the reasonableness of the same type of fees. According to counsel's filings, Macey Chern & Diab spent a total of three hours on an uncontested, boilerplate motion to redeem. It is not necessary for this Court to determine what would be the reasonable value of services rendered as in *Miller*, because disgorgement of the $600 is warranted for two other distinct reasons. However, the excessiveness problem again highlights the importance of disclosure. The Court cannot review a debtor's transaction with attorneys or effect a remedy under § 329 if it is never aware that the transaction existed or is kept in the dark regarding its details.

Also, it is curious that Macey Chern & Diab's retention contract lists additional flat fees for various post-petition services ranging from $150 to $300, with the exception of its vehicle redemption service, which is a whopping $600 even in the most routine cases. This fee appears to be set or suggested by the entity loaning and earning interest from the $600, 722 Redemption Funding, Inc., without regard to any lodestar evaluation that is consistent with § 329(b). As noted in *In re Miller*, 312 B.R. 626 (Bankr.S.D.Ohio 2004), the fee arrangement creates a conflict under the professional responsibility rule restricting third-party payment of attorneys' fees in situations where the third party will benefit from the legal representation. *See id.* at 628–29. Our local district court rules provide that "[a] lawyer shall not accept compensation for representing a client from one other than the client unless: (1) the client consents after disclosure; (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and (3) information relating to representation of a client is protected as required by LR83.51.6." N.D. Ill. Local Rule of Professional Conduct 83.51.8(f). The Court does not presently have enough information to determine whether counsel in this case has violated this rule. Still, it is noteworthy that an interference with counsel's judgment and relationship with the debtors can be inferred to the extent that a third party may have managed to inflate the price of a single post-petition service relative to other no-more-complex post-petition services. Because the debtors pay the $600 plus interest out of future income streams, long after the Chapter 7 case is closed, they are less likely to raise timely objections to this fee arrangement.

In passing, the *Bethea* decision alludes to the possibility of having the debtor rehire his bankruptcy counsel after the Chapter 7 is filed in order to perform post-petition services.[7] In other words, the fu-

---

7. The opinion goes on to assert that the "[l]egal fees incurred after filing in such situations receive administrative priority." *Bethea v. Robert J. Adams & Associates*, 352 F.3d 1125, 1128 (7th Cir.2003). This statement, however, is clearly in contravention of the Supreme Court's holding in *Lamie v. U.S. Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024

ture debtor and his bankruptcy counsel would *both* voluntarily enter into a prepetition contract that requires counsel to perform legal services only to the point of filing the bankruptcy case (and perhaps a handful of post-petition services that might include the § 341 meeting); then, if further post-petition services were desirable or necessary, the debtor would have to seek to re-retain the same (or possibly another) bankruptcy attorney for an additional fee that the debtor would not be contractually obligated to pay until after the case is filed. If Chapter 7 debtors' attorneys proceed in reliance on the dictum in that opinion, they ought to proceed with caution, thoroughly considering the implications of such an arrangement under the Illinois Rules of Professional Conduct.

(2004), discussed *supra,* which severely limits the compensation Chapter 7 debtors' attorneys may receive from the bankruptcy estate (as opposed to the debtor himself).

The debtor's attorney could file a proof of claim like any other creditor, *see* 11 U.S.C. § § 501 & 502, but his priority of payment from the estate would not be any higher than any other general unsecured creditor, *see* § 726(a).

8.  A related lingering question is whether the Chapter 7 debtor's attorney still has a duty to perform postpetition services to which the debtor is entitled under the pre-petition contract if the debtor does not pay the additional fees for the services and ultimately discharges that obligation. At least two obstacles must be overcome before the attorney could refuse to represent the debtor on the post-petition matter.

The first obstacle arises both under Illinois contract law generally and under the Illinois Rules of Professional Conduct specifically. Under contract law, a party is excused from the duty of counter-performance only if the other party has committed a *material* breach of contract; otherwise, the breach is considered minor, a court may award money damages for the breach, and the duty of counter-performance is not excused. *See Finch v. Illinois Community College Bd.,* 315 Ill. App.3d 831, 836, 248 Ill.Dec. 398, 734 N.E.2d 106, 110 (2000); *Circle Security Agency, Inc.*

The first problem relates to scenarios where an existing pre-petition retention contract already entitles a debtor to both pre-petition and post-petition services, depending on what needs arise in the case. If the traditional retention agreement has already been struck between the Chapter 7 debtor and her attorney, as in this case, restructuring the terms of the retention contract may not be in the debtor's best interest. The debtor already holds a contractual right to have post-petition services performed, and such client's best interests in the bankruptcy case would be to enforce the automatic stay (as interpreted in *Bethea* ) and demand that the services to which she is already contractually entitled be performed without a new agreement.[8]

*v. Ross,* 107 Ill.App.3d 195, 63 Ill.Dec. 18, 437 N.E.2d 667, 672 (1982). Similarly, Illinois Rule of Professional Conduct 1.16(b)(1)(F) states that "a lawyer shall not request permission to withdraw in matters pending before a tribunal, and shall not withdraw in other matters, unless such request or such withdrawal is because: (1) the client ... substantially fails to fulfill an agreement or obligation to the lawyer as to expenses or fee."

Thus, the question presented is whether a debtor's failure to pay for the post-petition redemption service is a "material" or "substantial" failure that would excuse his attorney from performing under the retention contract. This poses a difficult factual question in this case, one that the Court will not resolve here, because counsel has already received the vast majority of the fees to which he is entitled, or the $1150 retainer fee paid pre-petition. From a global standpoint, then, counsel has received about 82% of his total claim, assuming the Court allowed a more reasonable fee of $200–$300 for the redemption services—a fairly decent recovery for a creditor in a Chapter 7 case. The Court would have to decide on a case-by-case basis what percentage of nonpayment would, as a matter of fact, constitute a "material" or "substantial" failure to pay for legal services.

The second obstacle is the automatic stay itself. Generally, a party to an existing pre-petition contract with a debtor cannot take unilateral, affirmative action to terminate the

Forcing the debtor into a new post-petition contract in this scenario creates an issue of enforceability as a result of the pre-existing legal duty to perform (promising to perform a service one has already promised to perform under a prior contract), *see White v. Village of Homewood,* 256 Ill. App.3d 354, 195 Ill.Dec. 152, 628 N.E.2d 616, 618 (1993); *American Nat'l Bank of Champaign v. Warner,* 127 Ill.App.3d 203, 82 Ill.Dec. 122, 468 N.E.2d 184, 187–88 (1984), as well as a concern regarding conflicts of interest. Rule 1.7(b) of the Illinois Rules of Professional Conduct reads in part as follows:

> A lawyer shall not represent a client if the representation of that client may be materially limited by ... the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after disclosure.

Ill. Sup.Ct. Rules, Art. VIII, Rule of Professional Conduct 1.7(b). Even if a debtor's attorney did not try to elicit a subsequent post-petition contract supported by past consideration, the debtor's best interests and her bankruptcy counsel's best interests will still be at odds. Counsel is supposed to zealously enforce the debtors' rights, including the protection afforded by the automatic stay of collection activities under pre-petition contracts. Counsel may, however, be furthering his own financial interests by allowing the debtors to encumber themselves with a post-petition loan to pay these pre-petition legal debts which are subject to discharge under *Bethea.*[9] The awkward situation and hidden surprises that *Bethea* has created for many Chapter 7 practitioners will no doubt be factored favorably into a determination of whether the "lawyer reasonably believes the representation will not be adversely affected" by the conflict, and their indispensable presence in very complicated Chapter 7 cases will also tend to support a finding that representation is proper and reasonable in spite of the inherent and regrettable conflict. Nevertheless, even after a favorable conclusion on the first half of the exception, the debtor must still explicitly consent after complete disclosure of the conflict. Thus, a Chapter 7 debtor's attorney could not enter into a retention contract that leaves even a conditional balance for potential post-petition services without disclosing the conflict of interest to the client and obtaining her consent to the representation. Likewise, the attorney

---

contract, even if the trustee has not assumed it, unless he successfully seeks modification of the automatic stay. *See In re Computer Communications,* 824 F.2d 725, 728–31(9th Cir. 1987); *In re Minoco Group of Companies,* 799 F.2d 517, 519–20 (9th Cir.1986); *In re National Hydro–Vac Indus. Services,* 262 B.R. 781, 786–88 (Bankr.E.D.Ark.2001); *In re Elder–Beerman Stores Corp.,* 195 B.R. 1012, 1016–17 (Bankr.S.D.Ohio 1996); *In re M.J. & K. Co.,* 161 B.R. 586, 593–95 (Bankr.S.D.N.Y. 1993); *Matter of Joyner,* 46 B.R. 130, 131, 135–36 (Bankr.M.D.Ga.1985); *In re Augustino Enterprises,* 13 B.R. 210, 211 (Bankr. D.Mass.1981).

**9.** The retention contract explicitly excludes certain post-petition services, such as drafting a redemption motion, from the services covered by a Chapter 7 debtor's initial $1150 fee. Still, the contract creates an enforceable duty to perform this post-petition service in return for the debtor's promise to pay $600 for the same. Thus, the contract should be read as containing a separate term creating a "contingent" claim on the petition date, *see* 11 U.S.C. § 101(5)(A), because the contract causes the debtor to be liable for that amount only if she subsequently chooses that legal service. Nonetheless, the contingent claim for the $600 is still within the definition of a "claim" arising before the commencement of the case. Such a "claim" is subject to the restrictions of both the automatic stay, *see* § 362(a)(1) & (6), and the discharge injunction, *see* § 727(b) & § 524(a).

could not seek to modify or restructure an existing pre-petition retention contract covering post-petition services without disclosing the conflict of interest and obtaining consent.

One potential solution to the problem might be for the debtor and her attorney to enter into a reaffirmation agreement, effectively reinstating the terms of and personal liability created by the original contract. Both the Bankruptcy Court and the Seventh Circuit mentioned this possibility in *Bethea, see In re Bethea,* 275 B.R. 284, 290 (Bankr.N.D.Ill.2002), *affirmed, Bethea v. Robert J. Adams & Associates,* 287 B.R. 906 (N.D.Ill.2003), *vacated,* 352 F.3d 1125, 1127 (7th Cir.2003), *certiorari denied,* —— U.S. ——, 124 S.Ct. 2176, 158 L.Ed.2d 733 (2004), with the Bankruptcy Court going further by acknowledging the inherent problems presented by rules 1.7(b) and 1.8(a) of the Model Rules of Professional Conduct, *Bethea,* 275 B.R. at 290. The problem arises because in filing and presenting the reaffirmation agreement to the court, the debtor's attorney is supposed to be representing the best interests of the debtor while simultaneously representing his firm's own interests as the other party to the transaction. A reaffirmation of an otherwise dischargeable debt is a desirable option when the debtor's continued benefit from a good or a service (usually a home or a car) justifies the debtor's continuing personal liability on such debt. Furthermore, a reaffirmation agreement is legally enforceable only if the debtor's attorney signs an affidavit that the continuing personal liability does not pose an undue hardship to the debtor or her dependent; otherwise, the agreement is enforceable only if the bankruptcy court makes the same finding independently in addition to finding it to be in the debtor's best interest. 11 U.S.C. § 524(c), (d)(2). Determining what is an undue hardship for and/or the best interest of a debtor obviously requires close judgment calls requiring an unbiased evaluation of the potential remaining liability under a pre-petition contract compared to the value of the good or service to be retained. Under Illinois Rule of Professional Conduct 1.7(b), it would be highly doubtful that a lawyer could reasonably believe that he is able to provide an unbiased opinion as to the value of the remaining services he must provide pursuant to a retention contract, especially in uncontentious no-asset Chapter 7 cases in which debtors' attorneys perform brief and repetitious post-petition services. This valuation conflict has particular resonance in the context of reaffirmations of fee agreements done specifically to facilitate redemption motions, because the bankruptcy court in the *Miller* case has already found that the $400 fee charged for such a service was an unreasonably high price for a routine and uncontested redemption motion. Even if the bankruptcy lawyer could somehow reasonably believe that he can adequately represent both his law firm's interests and the debtor's interests in forging a reaffirmation of the retention agreement, he would, at a bare minimum, be required to disclose the conflict to the Chapter 7 debtor and then obtain her consent to proceed with the execution and filing of the same.

A second potential solution to the problem posed by *Bethea* would be for the debtor and the bankruptcy attorney to enter into a pre-petition retention contract requiring the attorney to perform either no post-petition services or very limited ones not including redemption work; then these parties could potentially enter into a post-petition contract for post-petition services the attorney has not already agreed to perform, creating a new post-petition claim. The trick here is that the post-petition contract must really be a post-petition contract. That is, the legally op-

erative events—the offer, acceptance, and exchange of consideration (either a promise to pay or an act of payment in exchange for a promise to render services)—must in fact occur after the date of the Chapter 7 filing to qualify as a claim arising post-petition and falling outside the scope of § 362(a)(6). From a professional responsibility standpoint, Chapter 7 debtors' attorneys should proceed with caution again, as they can limit the scope and objectives of their representation of the debtors only if they explicitly disclose those limits and obtain the clients' consent thereto. *See* Ill. Sup.Ct. Rules, Art. VIII, Rule of Professional Conduct 1.2(c); N.D. Ill. Local Rule of Professional Conduct 83.51.2(c).

The remaining professional responsibility concern in this matter relates to counsel's admitted intention to collect a pre-petition debt as the personal liability of the Chapter 7 debtors in spite of known mandatory authority prohibiting the same. In *Bethea* itself, Macey, Chern, & Diab victoriously represented different Chapter 7 debtors in enforcing the automatic stay and discharge injunctions against their previous bankruptcy counsels' attempts to collect its prepetition debt post-petition. *Bethea v. Robert J. Adams & Associates*, 352 F.3d 1125, 1126 (7th Cir.2003). The rules provide in relevant part, "In representation of a client, a lawyer shall not: ... (2) advance a claim or defense the lawyer knows is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by a good-faith argument for an extension, modification, or reversal of existing law." Ill. Sup.Ct. Rules, Art. VIII, Rule of Professional Conduct 1.2(f)(2); N.D. Ill. Local Rule of Professional Conduct 83.51.2(f)(2); *accord* Rule of Professional Conduct 3.3(a)(3) (duty to disclose known, adverse, mandatory authority to a tribunal). The same law firm operative in

developing *Bethea* has now ignored that case's holdings to collect pre-petition debts post-petition, and not surprisingly, it has not suddenly performed the 180–degree turn required to ask for reversal or modification of the same ruling.

### Conclusion

Macey Chern & Diab's Supplement to Application for Compensation of Debtor's Attorney is Denied in full.

If it has already collected the money, Macey Chern & Diab must disgorge the $600 it has collected as a fee for bringing the redemption motion.