**In re Richard and Kimberly CHAPMAN, Debtors.**

**No. 01–34985–13.**

United States Bankruptcy Court, W.D. Wisconsin.

April 12, 2005.

Jenny R. Armstrong, Madison, WI, for Debtors.

MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

This case began under Chapter 7 on August 29, 2001 with a different attorney. It was converted to Chapter 13 and debtors' current attorney, Jenny Armstrong ("Armstrong"), took over and filed amended schedules and a Chapter 13 plan on December 31, 2001. A second set of amended schedules and an amended plan were filed on April 2, 2002. A second

amended Chapter 13 plan was filed on April 29, 2002. That plan was confirmed on May 15, 2002.

The debtors' original and each amended Chapter 13 plan provided for Armstrong to receive a $1,200 attorney fee. The "no look" fee for Chapter 13 debtor representation in this district is approximately $1,200.[1] A $1,200 fee was paid to Armstrong in 2002 by the trustee according to the confirmed plan.

On December 10, 2002, Mrs. Chapman was involved in a car accident, and a personal injury lawsuit followed. Armstrong did not represent the debtors in their personal injury suit.

On June 11, 2004, Armstrong filed amended Schedules B and C to reflect that the debtors had received a personal injury settlement of $17,000, less attorneys' fees and costs, and to exempt the remaining proceeds of $8,388.77 which had been paid to the debtors. No objection was made to the claimed exemption.

A part of the attorneys' fees subtracted from the personal injury recovery was $2,000 paid to Armstrong. That $2,000 was in addition to payments made to Armstrong under the Chapter 13 plan, and was for services rendered in the bankruptcy case ("In partial payment of their outstanding account for Bankruptcy work."). (Armstrong Reply to Objections, p. 4)

On July 22, 2004, Armstrong applied to this Court for the approval of additional fees in the amount of $3,745.75, and expenses in the amount $274.76. The Chapter 13 trustee and the U.S. trustee objected.

At an August 23, 2004, hearing on Armstrong's application, she stated that de-spite the amount applied for, she sought only the $2,000 which had been paid to her from the personal injury recovery. I reviewed the services Armstrong had provided to the debtors since the confirmation of the plan and approved the release of $2,000 in fees upon proof that they were held in Armstrong's trust account. I was uncertain from her presentation and the statement of the trustee whether the funds were held in trust.

Armstrong had stated affirmatively that the $2,000 was in her trust account.

**The Court:** So you did not receive anything from the PI firm that was dealing with the claim?

**Ms. Armstrong:** No, no. that's what's at issue here is that $2,000 of the personal injury settlement went into my trust account because it was agreed with the clients that if they wanted to pay me $2,000 from this personal injury settlement I would write off the rest of any fees that they owed me.

When that issue came up, Mr. Chatterton [the Chapter 13 standing trustee] indicated that I needed to—before I could pay that out of my trust account I needed to bring it before the Court to get the Court's approval to allow that additional payment of $2,000 on a $5,000—

**The Court:** You're still holding that $2,000 in a trust; is that correct?

**Ms. Armstrong:** That's right...

(August 23, 2004 Transcript, pp. 8–9.)

Armstrong did not, at any time during the hearing, mention that the funds were ever deposited into an account other than her attorneys' trust account. Neverthe-

---

**1.** Actually, there is no court prescribed fee that will be allowed without separate application, but the Chapter 13 trustee rarely objects to fees of $1,200 or less provided in the plan, and often objects to higher fees. For a thorough discussion of "no look" fees, *see* Lundin, *Chapter 13 Bankruptcy,* 3d Ed. (2004), § 294.1 at 27–43.

less, I had some doubt as to how the funds had been treated by Armstrong.

On September 1, 2004, Armstrong sent a letter to the Court indicating that the $2,000 was originally deposited into her law office checking account on June 29, 2004, when she received the funds. But on August 22, 2004, when she realized her "error," Armstrong deposited the money in her trust account. The bank statement which Armstrong provided later showed the deposit was credited to the trust account on August 23, 2004 (the day of the hearing from which the above transcript excerpt was taken).

Rather than order the release of the funds, I scheduled an additional hearing on the matter for October 18, 2004. At that hearing, Armstrong described how the $2,000 she received from the personal injury attorney had been treated:

**Ms. Armstrong:** Then in July, which was about a month later, Attorney Chatterton contacted me and said that I would need to make application to the Court for the fees and so then I made application to the Court.

The Sunday before the hearing when I started—when they said that it would have to come before the Court, on Sunday I prepared for the case and transferred the money into my trust account before the hearing that we had with the Court. This was on the 22nd. I have provided copies of the deposit slips, both sets of deposit slips. I also provided a letter to the Court indicating when things were deposited as a part of what has been provided to both the Court—all of this has been provided to the Court, to Attorney Chatterton and to the U.S. Attorney. The funds are in my trust account and I'm happy to distribute them wherever you tell me to distribute them.

**The Court:** My recollection, and it may be inaccurate, is that at the last time we met you told me that it had been deposited to your trust account. There was no mention that it had been done the day before or anything like that. I'm going to take this under advisement to review the record and ask that the court reporter prepare a transcript of that hearing and this one. And I'm going to compare what has been said to me because it doesn't sound like the same information that I was given the last time. But because I don't trust my memory and because we have a recorded transcript I can determine that.

I'm certainly not at this point satisfied with the explanation or with the candor which I believe has been shown. We have a pure fundamental problem here that it's doubtful that the services provided were worth the amount that was charged but I'm going to review the record and if, in fact, I find that there has been any failure of candor I will not only deal with it in terms of this application but I will direct my concerns to the state bar as well.

I certainly had never heard before today any notion that there was a redirection of the funds from one account to the other. Certainly—and if it were on the day prior to the hearing in this Court I think I would have found that relevant and I think I would have remembered it. But I will look to make sure what my recollection is and I will take this matter under advisement. If anybody wishes to submit further affidavits or memoranda because this review is going to take some time, I will accept them for up to 20 days. Thank you. (October 18, 2004 Transcript, pp. 5–7.)

No affidavits or memoranda were submitted following the October 18, 2004, hearing. Having completed my review, it

is apparent that the standard for candor is fairly high, and in this case it was not met.

## I.

The criteria for awarding attorneys' fees in Chapter 13 are set forth in § 330. Section 330(a)(4)(B) states:

In a chapter 12 or chapter 13 case...the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

The test for reasonableness is found in § 330(a)(3), which states:

In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

And § 330(a)(4)(A), which states:

Except as provided in subparagraph (B), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

Although this case was not very complex, it presented some issues beyond the ordinary, and required increased attorney time. Armstrong showed that her services were reasonable and necessary beyond the $1,200 "no look" fee. Specifically, she itemized services provided in connection with the personal injury recovery and the amendment of the debtors' schedules and exemptions. I was prepared to award an additional $2,000 bringing her total compensation for the case to $3,200.

Quite apart from the nature, extent, and value of the services, I sought from Armstrong a summary of the agreement under which the payment was to be made. Specifically, I asked about how she had treated the funds received under the agreement. That inquiry arose naturally from statements made about the application for fees, but was not material to whether the fees had met the § 330 standards. Rather, it was material to § 329.

Section 329 deals with full disclosure of a debtor's attorneys' fees, and states:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

 *In re Lasica,* 294 B.R. 718, 720–21 (Bankr.N.D.Ill.2003) (citations omitted) states the relationship between the Code sections.

11 U.S.C. § 329(b) authorizes the bankruptcy court to assess the reasonable value of the services provided to the debtor by his attorney and to compare that value with the amount the debtor paid or agreed to pay for the attorney's services. If the court determines that the fees charged by the attorney are excessive—i.e., that they exceed the reasonable value of the services provided— then it may cancel any compensation agreement between the attorney and the client, or it may order the return of the excessive portion of the fee to the debtor's estate or to the entity making the payment. In making the reasonable value determination, the bankruptcy court is guided by the factors enumerated in 11 U.S.C. § 330. Once a question has been raised about the reasonableness of the attorney's fees under § 329, it is the attorney who bears the burden of establishing that the fees are reasonable.

The "no look" fee is appropriate for run of the mill cases that present no unusual challenges. *In re Lee,* 209 B.R. at 711. For greater fees in a Chapter 13 case, an application is usually required to be made to the court pursuant to 11 U.S.C. §§ 329 and 330.[2] This is especially true when the greater or additional fees are to be paid from estate property as administrative expenses under a confirmed plan. However, even when the payment is to be made from a source other than estate property, the fee arrangement must be disclosed so that parties in interest and the court may have notice and an opportunity to review the fee under § 329(b). Bankruptcy Rule 2016(b), states:

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

---

**2.** *In re Birky,* 296 B.R. 480, 481 (Bankr. C.D.Ill.2003) ("Pursuant to 11 U.S.C. § 330, attorneys seeking awards of compensation must seek prior Court approval before accepting payment."); *In re Lee,* 209 B.R. 708, 710 (Bankr.N.D.Ill.1997); *In re Fry,* 271 B.R. 596, 600 (Bankr.C.D.Ill.2001); *In re Griffin,* 313 B.R. 757, 764 (Bankr.N.D.Ill.2004) ("Defective disclosure is not a minor matter because a failure to provide the required disclosure alone justifies the bankruptcy court's denial of any or all fees requested.") (citation omitted).

Section 329(a) is a mandatory provision that requires the debtor's attorney to file with the court a statement of fees paid or agreed to be paid to the debtor's attorney regardless of the source of the payment. Section 329(b) allows the court to return excessive fees either to the estate if the fees would have been property of the estate or payment was under a Chapter 13 plan, or to the entity that made such payments. Thus, § 329 is not concerned solely with the depletion of the estate to the detriment of creditors.

This understanding of § 329 is bolstered by Rule 2016. Rule 2016(a) requires application by professionals seeking payment from the estate and Rule 2016(b) requires disclosure of any fee received or to be received under an agreement by the debtor's attorney without regard to its source. The last sentence of Rule 2016(b) makes it clear that Armstrong had a continuing duty to update her § 329 fee disclosure statements within 15 days of payment or agreement on payment. She received $2,000 on June 29, 2004, and first disclosed it by her fee application on July 22, 2004. Presumably she reached an agreement regarding fees before receiving the $2,000.

She did not timely update her disclosure to include that agreement.

■ The $2,000 that the debtors agreed to pay Armstrong was to come from exempt property[3] and was not a part of the bankruptcy estate.[4] So, Rule 2016(a) did not apply. But that does not limit in any way the application of Rule 2016(b). The agreement to pay and payment of the $2,000 occurred after one year before the filing of the petition, thereby placing the agreement and payment under § 329, and within this Court's oversight. It appears that Armstrong simply took the fees when the personal injury recovery was disbursed. Only when the trustee instructed her that the court had to approve all fees did she apply.[5] But even then she did not disclose that she had been paid.[6] Instead, she stated that she had an agreement for payment from funds held in trust.

■ The inquiry after August 23, 2004, thus became whether the $2,000 was in Armstrong's trust account, or whether the standards of Chapter 13 had been violated by her having taken unapproved fees. Further analysis shows that the answer to both of these questions is probably "No."

3. This is not strictly accurate since the amended schedules sought to exempt only the balance of the personal injury recovery after the payment of the attorneys' fees. Thus, the fees themselves were not claimed to be exempt although they surely were entitled to be. Because the debtor may amend exemption claims until the case is closed, it seems appropriate in this case to treat as done what ought to have been done. It would not lessen Armstrong's duty to do otherwise.

4. Because the debtors' interest in the personal injury recovery arose at the time of the accident which occurred post-petition, it would be property of the estate under § 1306. However, when the exemption became effective after the time to object expired, the exemption related back to the acquisition of the interest. Hence, the recovery was not estate property.

5. The trustee's advice was correct only if the fees are considered to have been paid from estate property. While there was a clear duty to disclose within 15 days, it is not clear that the post-petition fee paid from post-petition receipts would have to be approved in the absence of a motion or proceeding by an interested party to recover sums paid. However, the trustee's objection to Armstrong's application may leave the parties in the same posture as if the trustee had initiated a recovery.

6. Ironically, if she had sought the correct exemption and disclosed the $2,000 payment rather than applying for fees and expenses of more than $4,000 it is unlikely that either the Chapter 13 trustee or the U.S. trustee would have put the fees in issue by seeking to reduce or recover the payment.

However, Armstrong's failure to disclose the fee agreement as required by § 329(a) and Rule 2016(b) is a sufficient basis for the Court to deny the fees and to examine Armstrong's lack of candor to the Court.[7]

## II.

Wisconsin Supreme Court Rule ("SCR") 20:3.3, Candor toward the tribunal, states:

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal;

. . .

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

(b) The duties stated in paragraph (a) apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

(c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

The Representations by a Lawyer Comment to SCR 20:3.3 states in relevant part: "There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation."

The exact path the $2,000 took to her trust account was material only because Armstrong made an application for approval of her fees from that sum. Because she later produced deposit slips purporting to show a deposit of $2,000 to her trust account from her operating account on Sunday, August 22, 2004[8], it is unlikely that on August 23, 2004, she would have failed to recall having done so. Furthermore, Armstrong stated that about a month after she received the fees, Mr. Chatterton (the Chapter 13 trustee) informed her that she would have to make application to the Court for approval of the fees, and only then did Armstrong seek court approval of the fees.[9] It seems probable that Armstrong was attempting to create the appearance that the fees were yet to be received. So even though all that was required of her was a disclosure of the fee received, she attempted to deceive the court.

SCR 20:1.1, Competence, states:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

The Thoroughness and Preparation Comment to SCR 20:1.1 states, in relevant part:

Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and proce-

---

7. *In re Griffin*, 313 B.R. 757, 764 (Bankr. N.D.Ill.2004) ("Defective disclosure is not a minor matter because a failure to provide the required disclosure alone justifies the bankruptcy court's denial of any or all fees requested.") (citation omitted).

8. No time of day was noted for when this deposit was submitted by Armstrong or received by the bank. Nor was any noted for

when the deposit was credited by the bank the next day. It is possible that the deposit was made after the August 23, 2004, hearing accompanied by a deposit slip dated August 22, 2004.

9. As discussed at footnote 5, Chatterton's advice may have been inaccurate, but in as much as Armstrong followed it, it is her conduct in doing so that is now under review.

dures meeting the standards of competent practitioners.

As a frequent participant in Chapter 13 proceedings, Armstrong probably should know, or as an attorney is expected to find out, the Chapter 13 procedures and standards for approval of attorneys' fees. Nonetheless, the intricacies of § 329 are unusually arcane even for bankruptcy law, and reliance on advice from the Chapter 13 trustee is a common practice.

In *In re Kalal,* 252 Wis.2d 261, 643 N.W.2d 466, 467 (2002) the Wisconsin Supreme Court articulated why candor to the tribunal is so important when it said:

> We emphasize at the outset that an attorney's duty of candor toward the tribunal is central to the truth-seeking function of any court, including, obviously, this one. Oral argument is not an opportunity for deception. This court makes its decisions, albeit tentatively, immediately following oral argument, relying in part on information supplied by counsel in response to the court's questions.

In the present case, I did not make my decision at the close of oral arguments, but instead, withheld decision until I could verify that the money was in Armstrong's trust account. (August 23, 2004 Transcript, p. 14.) At no time during the August 23, 2004, hearing did Armstrong represent that the money had originally been deposited into her operating account. While this information might not have been material to whether a fee should be awarded under § 330, it is apparent that Armstrong withheld the information believing that it was material. She did not appear to know that taking the money from the debtors and depositing it directly into her operating account was permissible. But acting on the erroneous belief that application was required, Armstrong engaged in deception.

Kalal was publicly reprimanded for making an immaterial false statement during oral arguments to the Wisconsin Supreme Court in the *Smythe* case. In her concurrence, Chief Justice Abrahamson said:

> Supreme Court Rule 20:3.3 appears to allow zero tolerance for false statements of fact or law regardless of their materiality. But shouldn't materiality play a role in determining the discipline to be imposed?

*Kalal,* 643 N.W.2d at 476. The thoughtful question raised by Chief Justice Abrahamson is acutely troubling in this case. Armstrong sought to deceive when she need not have about a fact that was material only to the quality of disclosure required.

In *Matter of Disciplinary Proceedings Against Morrissy,* 172 Wis.2d 58, 492 N.W.2d 616, 620 (1992) the Court held that Attorney Morrissy violated SCR 20:3.3 when he failed to disclose facts necessary for the court to make an informed decision. The Court said:

> He also violated SCR 20:3.3(d) by failing to disclose to the probate court the agreement he had reached with Ms. Dortch in order that the court might make an informed decision concerning the propriety of his fee.

But in this case, the facts withheld were not necessary for any determination by this court. How the $2,000 had been applied did not go to the question of whether they had been earned in accordance with § 330. Although it can be fairly said that, as the only disclosure provided, the accuracy of the statement was material under § 329. So, it appears that Armstrong violated SCR 20:3.3 when she failed to divulge to this Court at the August 23, 2004, hearing that the payment for her services in the debtors' bankruptcy case was deposited directly into her operating account.

### III.

The most perplexing issue in this matter is the appropriate sanction for Armstrong's misrepresentation to the court. While candor to the court is an absolute obligation without limitation for materiality, it seems that misrepresentation of material facts ought to bear a stiffer penalty than misrepresentation of immaterial facts (even if they are believed to be material when the misrepresentation is made). There are three types of sanctions that are readily available in this case. The first, publication of this opinion, will occur (this is partly due to the analysis of the Bankruptcy Code provisions it contains). The second, forwarding the opinion to the Wisconsin Office of Lawyer Regulation, will also occur, as a clear violation of SCR 20:3.3 has been identified. The third sanction available is the denial of the fee application despite my earlier determination that the standards of § 330 had been met. The use of this sanction would be the imposition of a monetary penalty or fine for engaging in proscribed conduct and not a determination of the merits of the application. Viewed in this light, only so much as is necessary to indicate the severity of the transgression and to deter similar conduct in the future ought to be assessed. That calculation is inevitably inexact. The transgression while far from trivial was less serious than it might have been if the misrepresentation had been material to a more central issue. On balance, I am satisfied that limiting the allowed fee to $1,000 and requiring Armstrong to return $1,000 to the debtors will be an appropriate sanction. It may be so ordered.