**In re Max R. Wagers, Georgia A. Wagers, Debtors.**

**Christopher J. Redmond, Trustee, Plaintiff,**

**v.**

**Lentz & Clark, P.A., Max R. Wagers, and Georgia A. Wagers, Defendants.**

**Bankruptcy No. 03–24484. Adversary No. 04–6095.**

United States Bankruptcy Court, D. Kansas.

Feb. 23, 2006.

393

Carl R. Clark, Lentz and Clark, P.A., Overland Park, KS, for Debtors.

Robert D. Maher, Leawood, KS, for Trustee.

## OPINION ON CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT

DALE L. SOMERS, Bankruptcy Judge.

This proceeding is before the Court on the plaintiff-trustee's motion for partial summary judgment and the defendants' response and counter-motion for partial summary judgment. The plaintiff-trustee was originally represented by counsel Christopher J. Redmond and Brian M. Devling; after the motions were filed, Mr. Devling withdrew and Jacob W. Stauffer entered his appearance for the trustee. The defendants are represented by counsel

Carl R. Clark and Jeffrey A. Deines. The Court has reviewed the relevant pleadings and is now ready to rule.

Before filing for bankruptcy, debtors Max R. and Georgia A. Wagers (Debtors) gave the law firm of Lentz & Clark, P.A. (Firm) $5,000 in cash and an assignment of any tax refunds they might be entitled to, all as deposits for payment of fees to be incurred representing them in dealing with financial difficulties and, ultimately, filing a Chapter 7 bankruptcy. After the case was filed, the trustee for the Debtors' bankruptcy estate [1] (Trustee) brought this adversary proceeding [2] in an effort to require the Firm to turn the assigned tax refunds over to the estate, even though the Firm is continuing to represent the Debtors. Relying on the facts that (1) the Kansas Supreme Court has declared that advance payments held by a lawyer or law firm remain the client's money and (2) Chapter 7 debtors' attorneys not employed pursuant to § 327 of the Bankruptcy Code [3] cannot be paid from property of the estate, the Trustee seeks partial summary judgment requiring the Firm to deliver the tax refunds to him based upon counts I and IV of his Complaint.

For the reasons discussed below, the Court denies the Trustee's motion and concludes the advance payments, including the assignment of future tax refunds, are not property of the estate. The estate's interest in the assigned cash and tax refunds on the date of filing was limited to the contingent right to receive any balance remaining after the Firm's prepetition and postpetition fees and expenses are paid from the retainer.[4] Further, the Court holds that § 329 is the Code section that controls the payment of attorney fees from the retainer.

## FACTS.

The material facts are uncontroverted. At the end of May 2003, the Debtors hired the Firm to provide them with legal advice about their financial situation. In June 2003, the Debtors signed a letter agreement (Legal Representation Agreement) specifying the terms of the representation. That same month, they paid a $5,000 retainer that the Firm deposited in its trust account. Over the next several months, the Firm billed the Debtors for $2,866 in fees and expenses. It charged this amount against the retainer, leaving a balance of $2,134. On October 22, 2003, the Debtors executed an Assignment of Tax Refunds and Limited Power of Attorney which assigned to the Firm any refunds they might obtain by filing original or

---

1. Strictly speaking, a married couple's joint bankruptcy petition creates two estates that can be consolidated or jointly administered only by order of the Court. *See* 11 U.S.C.A. § 302(a) & (b); Fed. R. Bankr.P. 1015(a) & (b) & 2009. The practice in this district, however, as in most of the country, is to administer joint petitions jointly without entering an order to do so. *See* 2 *Collier on Bankruptcy*, ¶ 302.02[1][b] (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 15th ed. rev. 2005) (hereafter cited as "[vol. no.] *Collier* ¶ ——"). The practice here is also to refer to the joint estates in the singular, rather than the plural.

2. The Court has jurisdiction. 28 U.S.C.A. § 1334. This is a core proceeding which the Court may hear and determine as provided in 28 U.S.C.A. § 157(b)(1) and (b)(2)(E).

3. 11 U.S.C.A. § 327. This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C.A. §§ 101 to 1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr.P. (2004), unless otherwise specified.

4. The meaning of "retainer" as used in this opinion is explained at pp. 19–22.

amended tax returns for 2003 and prior years as an additional retainer "for services rendered or to be rendered." With the Firm's help, the Debtors filed a joint Chapter 7 bankruptcy petition the day after assigning the refunds. The Debtors have testified that they intended for the assignment to pay the fees and expenses the Firm would charge for representing them in their bankruptcy case, with any remaining balance to be paid into the bankruptcy estate.

A few weeks before filing for bankruptcy, the Debtors filed a 2002 federal income tax return that generated a refund. A couple of weeks after filing for bankruptcy, they filed amended federal tax returns for 1997 through 2001; these returns all generated refunds. The Debtors received these refunds (along with a state refund for an unspecified year) after they filed for bankruptcy and, following through on the assignment, they delivered the refunds to the Firm. The Firm deposited the refunds, a total of $51,660, in its trust account. Late in 2004, the Debtors filed 2003 federal and state income tax returns that should also generate refunds totaling $5,475, although the Debtors had not yet delivered them to the Firm when the summary judgment motions were filed in this proceeding. In January 2004, the Debtors paid the Firm $1,000, and in September another $500; the Trustee does not contend the estate has any interest in these postpetition payments.

5. The Court is certain the Debtors have incurred additional fees and expenses since then, adding to the Firm's claim against the retainer.

6. During 2004, with the Trustee's consent, the Firm disbursed a total of $2,881.17 from its trust account to pay certain expenses that the estate would otherwise have incurred. The Trustee agrees this amount should be subtracted from the money he claims on behalf of the estate.

From October 2003 through September 2004, the Debtors incurred a total of $14,361.60 in fees and expenses with the Firm. The Firm applied the $2,134 balance of the cash retainer to the October and November 2003 fees. Relying on records supplied by the Firm, the Trustee asserts that only $1,084.75 of this amount was applied to fees earned before the Debtors filed for bankruptcy; he does not claim the estate has any interest in this portion of the cash retainer.

The Firm's records show the remaining $1,049.25 of the cash retainer was applied to postpetition fees. Although the Trustee does not appear to have previously claimed that the estate's interest in that portion precludes the Firm from keeping that money, he has made that claim in his reply to the Firm's brief opposing his motion. Through September 2004,[5] the Firm was owed $13,276.25 in fees and expenses, all incurred postpetition, that the Trustee argues cannot be paid from the cash retainer and the assigned tax refunds, despite the assignment. Adding the $1,049.25 of the cash retainer to the $51,660 in tax refunds and subtracting agreed expenses of $2,881.17[6] leaves a balance of $49,828.08 that the Trustee claims the Firm must turn over to him.[7]

**The Parties' Positions.**

In June 2004, the Trustee brought this proceeding against the Firm and the Debtors, seeking to recover the assigned refunds from the Firm. In January 2004, the Supreme Court had decided *Lamie*,[8] which

7. Of course, the Trustee also claims the estate's interest in the 2003 refunds is superior to any claim the Firm can make against them, but the Firm had not yet received that money when the summary judgment motions were filed.

8. *Lamie v. United States Trustee,* 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004).

held that § 330, the main statute governing compensation of officers of bankruptcy estates, does not allow debtor's counsel in a Chapter 7 proceeding to be compensated from estate assets unless the attorney is employed by the trustee with approval of the court. The Trustee alleges in his Complaint that *Lamie* has created confusion about the ability of debtor's counsel in a Chapter 7 proceeding to apply funds from the assignment of income tax refunds to payment of fees.[9]

The Complaint alleges six counts.[10] The Trustee seeks summary judgment on count I, claiming the tax refunds are property of the estate, and count IV, claiming the tax refunds are property which the trustee may use, sell, or lease under § 363, so they must be turned over to the Trustee under § 542. The Trustee's summary judgment motion seeks to recover the refunds and the portion of the cash retainer applied to postpetition fees from the Firm through the following theory: (1) under Kansas law, money that clients pay their attorneys for future services remains the clients' money at least until the services are provided;[11] (2) when the Debtors filed for bankruptcy, all interests in the refunds therefore became property of the bankruptcy estate because the Firm had not yet provided any services not covered by the initial $5,000 retainer; (3) fees for services an attorney renders after a bankruptcy petition is filed can be paid from property of a Chapter 7 estate only if the fees have been allowed under § 330(a);[12] (4) under the Supreme Court's ruling in *Lamie*,[13] the Firm's postpetition fees and expenses cannot be allowed under § 330(a) because the Firm was not employed by the Trustee; and (5) since the Firm's postpetition fees cannot be paid from the refunds, it should be required to turn the refunds over to the Debtors' bankruptcy estate, pursuant to § 542. The Trustee's motion is based on the combined effect of his interpretation of Kansas law and the application of the *Lamie* decision.

Responding for itself and the Debtors, the Firm also moves for partial summary judgment. It contends that the first two premises of the Trustee's theory are mistaken, insisting that because the Debtors assigned the refunds to the Firm before they filed for bankruptcy, the bankruptcy estate's interest in the refunds is limited to a contingent right to receive any balance

---

9. See Adversary Complaint, Dkt. no. 1 at ¶ 22.

10. The first count alleges the Debtors' assignment gave the Firm only a security interest in, not ownership of, the refunds, so the refunds are property of the bankruptcy estate that must be turned over to the Trustee. The second count alleges the Debtors received less than a reasonably equivalent value from the Firm in return for the assignment, and seeks to avoid the transfer under § 548 of the Bankruptcy Code as a fraudulent transfer. The third count alleges the Trustee can recover the refunds under § 550 of the Code. The fourth count alleges the refunds are property of the estate that the Trustee may use, sell, or lease under § 363 of the Code, so that the Firm must turn them over to the Trustee as required by § 542. The fifth count alleges the value of the refunds exceed the reasonable value of the legal services the Firm provided the Debtors before they filed for bankruptcy, so the refunds should be returned to the bankruptcy estate pursuant to § 329. The sixth count alleges any lien the Firm might have on the refunds is invalid, unperfected, and subordinate to the Trustee's rights in them, and therefore avoidable under § 544 of the Code.

11. *In re Scimeca*, 265 Kan. 742, 759–60, 962 P.2d 1080, 1092 (1998).

12. *See* 11 U.S.C.A. § 503(b)(2) (fees allowed under § 330(a) are administrative expenses); § 507(a)(1) (administrative expenses allowed under § 503(b) are first priority expenses); § 726(a)(1) (property of estate is to be distributed first to pay claims specified in § 507).

13. 540 U.S. at 526, 124 S.Ct. at 1023.

remaining after the Firm's fees and expenses for representing the Debtors in their bankruptcy case are paid from the refunds. The Firm further contends that § 329, "Debtor's transactions with attorneys," instead of § 330, "Compensation of officers," is the appropriate Code section to apply when determining the Firm's right to compensation, and that under § 329, the Firm is entitled to be paid prepetition and postpetition fees and expenses from the assigned property.

## ANALYSIS.

### I. The Debtor–Attorney Relationship and the Importance of Retainers.

In this case, the Trustee is challenging the postpetition validity of the retainer agreement between the Firm and its clients, the Chapter 7 Debtors. The agreement here is no different from that customarily used in this district. Taking cash and assignments of tax refunds for the payment of both prepetition and postpetition services is an accepted practice to assure payment for attorney services. Counsel for Chapter 7 debtors provide valued and essential services postpetition, and this Court has a significant interest in preserving the availability of that representation.

Several courts applying the laws of states other than Kansas, including the Fourth Circuit when *Lamie* was before it, have reached conclusions supporting the Trustee's position that a Chapter 7 debtor's attorney cannot collect postpetition fees from a retainer the debtor paid prepetition.[14] More recently, the Seventh Circuit ruled that a Chapter 7 debtor's discharge covers his or her personal liability for any fees the debtor had arranged under a prepetition agreement to pay his or her bankruptcy attorney, even if the fees were for services provided postpetition.[15] If combined, the Fourth Circuit's ruling that postpetition fees can't be charged against a prepetition retainer and the Seventh Circuit's ruling that postpetition fees incurred under a prepetition agreement are covered by a debtor's Chapter 7 discharge would mean that there is no way for an attorney representing a Chapter 7 debtor to be assured of getting paid for postpetition services. Chapter 7 trustees could recover from attorneys any property clients supplied prepetition that was intended to pay postpetition fees, and collecting from clients personally postpetition would be barred by their discharges. In effect, if the rules of both these cases control, an attorney cannot be confident at the time of the client's filing for bankruptcy that money will be available to pay for the legal services which will be required during the bankruptcy case.

Following the approaches of the Trustee and the Fourth and Seventh Circuits would undermine the unique role occupied

14. *E.g., In re Equipment Servs., Inc.,* 290 F.3d 739, 746–47 (4th Cir.2002), *aff'd on different issue sub nom. Lamie v. United States Trustee,* 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (Virginia law); *In re Mondie Forge Co.,* 154 B.R. 232, 236–39 (Bankr. N.D.Ohio 1993) (Ohio law); *In re On–Line Servs., Ltd., LLC,* 2004 WL 2671669, slip op. at 2–3 (Bankr.N.D.Iowa 2004) (not reported in B.R.) (Iowa law); *see also Snyder v. Dewoskin (In re Mahendra),* 131 F.3d 750, 754–56 (8th Cir.1997) (Missouri law; holding prepetition mortgage on real property did not secure postpetition attorney fees; in dicta, said same would be true for cash security retainer).

15. *Bethea v. Robert J. Adams & Assocs.,* 352 F.3d 1125, 1126–1129 (7th Cir.2003) (2 to 1 decision; dissenting judge thought only question of prepetition fees should be reached); *but see In re Hines,* 147 F.3d 1185, 1190–91 (9th Cir.1998) (concedes plain language of Bankruptcy Code leads to conclusion postpetition fees of Chapter 7 debtor's attorney are discharged, but holds doctrine of necessity precludes that result).

by a Chapter 7 debtor's attorney. Essentially all Chapter 7 debtors need legal advice to help them get their bankruptcy cases properly filed. Only a very few need the assistance of other professionals such as accountants before filing, but they all need legal advice and therefore benefit from the assistance of an attorney. Of all the debtor's creditors and potential creditors, usually only his or her bankruptcy attorney deals with the debtor knowing that the debtor is going to file for bankruptcy and is, in fact, hired to help the debtor do so.[16] A Chapter 7 debtor's attorney must also continue to help the debtor postpetition in order to insure the debtor receives as much of a fresh start as he or she is entitled to, and to fulfill the debtor's probable and reasonable expectations under their prepetition contract. Postpetition representation is also required to satisfy the bankruptcy court's expectations of the attorney as an officer of the court. It is common practice in this district, as well as others,[17] for counsel to obtain a prepetition retainer to assure payment for postpetition services. The Trustee's approach would render this practice futile.

To solve the problem of the discharge of personal liability for fees under a prepetition contract, the Seventh Circuit suggested that an attorney could agree to represent debtors in preparing to file for bankruptcy, terminate the representation as of the filing of the petition, and require the debtors to rehire him or her under a separate postpetition agreement if they want postpetition representation.[18] This suggestion assumes bankruptcy courts universally allow attorneys to structure their representation of Chapter 7 debtors this way. In fact, however, while bankruptcy courts have taken differing views of the obligations attorneys undertake by representing clients in filing Chapter 7 bankruptcy petitions, none appears to have allowed the exclusion of all postpetition services. Attorneys are almost always required to accompany their clients to the meeting of creditors that is scheduled and held only after the petition is filed.[19] Some bankruptcy courts also require attorneys who prepare Chapter 7

---

16. *See Bethea v. Robert J. Adams & Assocs. (In re Bethea)*, 275 B.R. 284, 292 (Bankr.N.D.Ill. 2002), *aff'd* 287 B.R. 906 (N.D.Ill.), *rev'd* 352 F.3d 1125 (7th Cir.2003) ("Chapter 7 is intended to afford relief to financially distressed debtors. A debt incurred to the debtor's bankruptcy counsel does not add to the debtor's distress; rather, it is the means by which the debtor may obtain relief from that distress.").

17. Morgan D. King, *Between the Charybdis of* Biggar *and the Scylla of* Lamie: *How Can a Debtor's Lawyer Get Paid?*, Norton Bankr.L. Adviser, June 2004 at 2, n. 4 (response to survey indicated that 71% of consumer attorneys in 35 state collect prepetition retainer sufficient for both prepetition and postpetition services).

18. *Bethea*, 352 F.3d at 1127–28. The court also mistakenly said that legal fees under such a postpetition agreement with the debtors would be entitled to administrative priority, *id.* at 1128, an assertion *Lamie* clearly refutes.

*See In re Griffin*, 313 B.R. 757, 766 n. 7 (Bankr.N.D.Ill.2004) (pointing out that *Lamie's* holding clearly contravenes *Bethea's* assertion of administrative priority). The *Griffin* court also discussed a number of problems with *Bethea's* suggestion attorneys can represent debtors to the date of a bankruptcy filing, and then require a new agreement for any postpetition legal assistance. *Id.* at 766–70.

19. *See, e.g., In re Johnson*, 291 B.R. 462, 466–72 (Bankr.D.Minn.2003) (under local court rule, attorney could not limit representation of Chapter 7 debtors to exclude attorney's attendance at meeting of creditors); *see also* King, *Between the Charybdis of* Biggar *and the Scylla of* Lamie, Norton Bankr.L. Adviser, June 2004 at 2 & n. 14 (indicating U.S. Trustee advises Chapter 7 trustees to consider seeking disgorgement of fees of debtor's attorney who fails to appear at meeting of creditors).

petitions to continue to represent the debtors at a minimum in postpetition matters that arise in the main bankruptcy case, such as stay relief motions.[20] Indeed, some matters that may arise—objections to the exemptions the debtors have claimed, objections to discharge based on alleged errors or omissions in the Schedules or Statement of Financial Affairs, and motions to dismiss under § 707(b) for substantial abuse—are so closely related to the advice the attorney gave in the prepetition preparation for filing that the attorney would at least be morally bound, and might be legally bound, to defend the debtors' position against such attacks. Some courts go even further and require the attorney to represent the debtors in any adversary proceedings that might be brought against them.[21] To the extent that the court before which an attorney files a petition takes the view that the representation automatically extends to postpetition matters, the attorney could not effectively limit the representation to prepetition matters as a way to improve the chances of getting paid for the postpetition representation the debtor needs.

In addition, the Seventh Circuit's suggestion of separate prepetition and postpetition contracts raises difficult questions under the Kansas Rules of Professional Conduct. Rule 1.1 requires the lawyer to provide competent representation,[22] Rule 1.2(c) permits limiting "the objectives of the representation if the client consents after consultation,"[23] and Rule 1.4(b) requires the lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."[24] Together, these rules indicate the lawyer would have to explain everything that could happen in the client's Chapter 7 bankruptcy case that might require a lawyer's postpetition help in order to obtain the client's valid consent to terminate the representation with the filing of the petition.[25] In addition, Rule 1.7(b) provides: "A lawyer shall not represent a client if the representation of that client may be materially limited . . . by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation."[26] To avoid running afoul of this rule, the lawyer

---

**20.** The local rules that apply to attorneys appearing before this Court would seem to require an attorney who signs a Chapter 7 petition with the debtors to file a motion and obtain the Court's approval in order to withdraw from representing the debtors in the bankruptcy case. *See* D. Kan. Rule 83.5.5 (withdrawal by attorney who has appeared "in a case" is not effective until order authorizing withdrawal is filed, unless substitution of counsel is accomplished); D. Kan. LBR 2090.2 (Rule 83.5.5 and other District Court rules apply to attorneys).

**21.** *See, e.g., In re Egwim,* 291 B.R. 559, 569–75 (Bankr.N.D.Ga.2003) (unless attorney can make unlikely showing of informed consent to limitation on representation, attorney filing bankruptcy case must represent debtor in postpetition matters in main case and adversary proceedings that affect Chapter 7 debtor's primary objectives of eliminating debt

and retaining property); *In re Castorena,* 270 B.R. 504, 525–31 (Bankr.D.Idaho 2001) (attorney's efforts to limit representation of debtors in Chapter 7 bankruptcy unlikely to succeed because informed consent to limitations can rarely, if ever, be shown).

**22.** 2004 Kan. Ct. R. Ann. 342.

**23.** 2004 Kan. Ct. R. Ann. 350.

**24.** 2004 Kan. Ct. R. Ann. 367.

**25.** *See Castorena,* 270 B.R. at 529–30 (suggesting valid consent could rarely, if ever, be obtained); *Egwim,* 291 B.R. at 569–72 (declaring that attorney representing Chapter 7 debtor ordinarily may not limit scope of engagement).

**26.** 2004 Kan. Ct. R. Annot. 391.

would have to be satisfied the client either could hire an attorney postpetition to provide the necessary services or would be capable of competently proceeding without legal assistance.

But even if the courts allowed attorneys to terminate the representation on filing the petition, as a practical matter, how could attorneys properly advise clients prepetition about matters that might arise after a petition is filed without raising expectations of continuing the representation, or at least leaving their clients extremely confused about the necessity of hiring the same or another attorney again after the petition is filed? How could they overcome the likely suspicion of trustees, creditors, and courts that they really made the agreement prepetition to have their clients "rehire" them postpetition? Even their clients might, in hindsight, change their minds about what the original understanding was.[27]

For these reasons, the Court is persuaded that resolution of the issues the Trustee has raised here will have a profound impact on bankruptcy courts, debtors, and their attorneys. As a result, in reaching its decision, the Court has given careful consideration to various provisions of federal and state law that affect these issues.

## II. The Tax Refunds Are Not Property of the Estate.

■ The Bankruptcy Code generally provides that when a debtor files for bankruptcy, the debtor's legal and equitable interests in property become property of the estate.[28] But nonbankruptcy law, usually state law, defines the debtor's rights in the property.[29] In the absence of explicit federal preemption, a Chapter 7 trustee ordinarily receives the property subject to any restrictions nonbankruptcy law imposed on the debtor's rights.[30] "An interest limited in the hands of the debtor is equally limited in the hands of the estate." [31] The issue before the Court therefore requires determining the Debtors' interest in the tax refunds under Kansas law on the date of filing.

■ In support of his argument that the tax refunds all belong to the bankruptcy estate, the Trustee cites the Tenth Circuit's decision in *In re Barowsky*,[32] which held that a Chapter 7 debtor's right to receive the portion of a federal income tax refund attributable to the prepetition por-

---

**27.** *Cf. Bethea,* 352 F.3d at 1126 (prepetition, debtors agreed to pay attorneys over time for Chapter 7 assistance, but after discharge, claimed attorneys violated discharge injunction of § 524 by trying to collect amounts that remained unpaid).

**28.** 11 U.S.C.A. § 541(a).

**29.** *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–918, 59 L.Ed.2d 136 (1979).

**30.** *Integrated Solutions, Inc. v. Service Support Specialties, Inc.,* 124 F.3d 487, 492–93 (3d Cir.1997); *see also In re ANR Advance Transportation Company, Inc.,* 247 B.R. at 774 (finding escrow to be valid and holding none of escrow funds were property of estate); *Dickerson v. Central Florida Radiation Oncology Group,* 225 B.R. 241 (M.D.Fla.1998) (holding funds debtor was required to deposit

in segregated account were held in escrow and debtor's interest was limited to contingent remainder, which became property of estate on bankruptcy filing); *Cedar Rapids Meats, Inc. v. Hager (In re Cedar Rapids Meats, Inc.),* 121 B.R. 562 (Bankr.N.D.Iowa 1990) (holding fund established to guarantee payment of worker's compensation claims was an escrow and not property of estate; debtor's interest was limited to contingency).

**31.** *In re ANR Advance Transportation Co., Inc.,* 247 B.R. 771, 774 (Bankr.E.D.Wis.2000) (quoting *In re N.S. Garrott & Sons,* 772 F.2d 462, 466 (8th Cir.1985)).

**32.** *In re Barowsky,* 946 F.2d 1516, 1517–19 (10th Cir.1991).

tion of the tax year in which the debtor filed for bankruptcy becomes property of his or her bankruptcy estate. The Court agrees that, under *Barowsky*, all the tax refunds attributable to money the Debtors had paid to the IRS for tax years ending before their bankruptcy filing and for the tax year in which they filed would constitute property of the estate if they had not assigned the refunds to the Firm.

■ But the question here is whether the prepetition assignment of the refunds affects the extent to which the refunds became property of the Debtors' bankruptcy estate. *Barowsky* did not consider that question. In a case that did consider a prepetition assignment of a tax refund, *In re Martin*,[33] the court held under Oregon law that although the Chapter 13 debtors' tax refund arose prepetition and was received postpetition, a prepetition assignment to a bank of the right to the refund prevented the refund from becoming property of the estate.

■ Under Kansas law, "an assignment is an expression of intent by the assignor that his right shall pass to the assignee."[34] If, after the assignment, the property assigned comes into the hands of the assignor, the property is regarded as trust funds belonging to the assignee.[35] No particular form is required; the assignment must simply establish the intent to transfer the property to the assignee.[36] The assignment by the Debtors clearly expresses their intent to transfer all inter-est in the tax refunds to the Firm. It states:

> We, Max R. and Georgia A. Wagers, hereby assign to Lentz & Clark, P.A., for services rendered or to be rendered any and all tax refunds, resulting from original or amended returns, received for 2003, and any and all prior years. Additionally, we, Max R. and Georgia A Wagers, hereby appoint Lentz & Clark, P.A., as attorney in fact to endorse and deposit tax refund checks received for 2003 and any and all prior years.

By this document, the Debtors passed all of their title or interest in the tax refunds to the Firm for "services rendered and to be rendered" and divested themselves of all right of control over the refunds.[37] The assignment is absolute and unconditional.

The assignment in this case is nearly identical to the one at issue in *Lagerstrom*.[38] One day before filing for bankruptcy, the debtor executed a document which stated:

> In consideration of legal services rendered and to be rendered in connection with bankruptcy proceedings, the undersigned hereby assign and transfer to BERNARD G. STUTLER all their interest in and to any claim for refund against the United States Government for refund of income taxes over-withheld during the calendar year 1968, to the extent of $245.00.

The trustee filed a petition asking the bankruptcy referee to declare the assignment invalid under the Federal Assign-

---

**33.** *Sticka v. Mellon Bank (In re Martin)*, 167 B.R. 609, 612–18 (Bankr.D.Or.1994).

**34.** *Brewer v. Harris*, 147 Kan. 197, 201, 75 P.2d 287, 290 (1938).

**35.** *Patrons State Bank & Trust Co. v. Shapiro*, 215 Kan. 856, 861, 528 P.2d 1198, 1203 (1974).

**36.** *Id.*

**37.** *Army Nat. Bank v. Equity Developers, Inc.*, 245 Kan. 3, 22–23, 774 P.2d 919, 932 (1989) (quoting *Patrons State Bank v. Shapiro*, 215 Kan. at 861, 528 P.2d at 1203).

**38.** *In re Lagerstrom*, 300 F.Supp. 538 (S.D.Ill. 1969).

ment of Claims Act and not perfected under the Uniform Commercial Code. It was stipulated that the federal act was not complied with and no UCC financing statement was filed. The referee rejected those challenges. Concerning the UCC, he found that the bankrupt was not attempting to create a security interest in the tax refund. Rather, the debtor "made an outright assignment and transfer of the refund to his attorney as part payment on his fees."[39] The referee's opinion was affirmed by the district court.

Revised Article 9 of the UCC confirms the *Lagerstrom* analysis. For purposes of Article 9, a tax refund is a payment intangible, defined as a "general intangible under which the account debtor's principal obligation is a monetary obligation."[40] Article 9 generally applies to both security interests in and sales of payment intangibles.[41] But with respect to sales transactions,[42] the security interest is perfected upon attachment,[43] and the seller of the payment intangible retains no "legal or equitable interest" in the payment intangible sold.[44] In this case, as in *Lagerstrom,* the assignment of the tax refunds by the Debtors was a sale. The Debtors retained no legal or equitable interest in the refunds based upon the transaction documents.

However, because of the purpose of the assignment, the Debtors retain a reversionary interest in the portion, if any, of the tax refunds not needed for their representation. The uncontroverted testimony establishes that the assignment was a prepayment of attorneys fees and expenses due the Firm for postpetition services on behalf of the Debtors. The Legal Representation Agreement between the Debtors and the Firm establishes hourly rates for attorney and legal assistant time devoted to the representation. It provides for the payment of expenses and fees from the retainer, initially in the amount of $5,000. The Disclosure of Compensation of Attorneys for Debtors filed by the Firm pursuant to Bankruptcy Rule 2017 identifies the assignment of tax refunds as an additional retainer. Although there is no written assignment accompanying the transfer of the cash other than the Legal Representation Agreement, because the cash was transferred for the same purpose as the tax refunds were assigned and counsel for the Debtors reported to the Court that both the cash and the tax refunds constitute the retainer in this case, the Court concludes that the cash was likewise an assignment transferring all of the Debtors' right, title, and interest.

39. *Id.* at 541.

40. K.S.A.2004 Supp. 84–9–102(a)(61). Payment intangibles, first defined by Revised Article 9, are by definition a subcategory of general intangibles. Tax refunds were held to be general intangibles under Article 9 prior to the revision. *E.g., In re Martin,* 167 B.R. at 619. Although there are no cases under Revised Article 9 discussing whether tax refunds are payment intangibles, tax refunds clearly satisfy the definition because the principal obligation of the taxing authorities is payment.

41. K.S.A.2004 Supp. 84–9–109(a)(1) and (3).

42. Article 9 adopts the definition of sale from Article 2. K.S.A.2004 Supp. 84–9–102(b). K.S.A. 84–2–106 defines a sale as the "passage of title from the seller to the buyer for a price." For purposes of Article 2, the price may be paid in money or otherwise. K.S.A. 84–2–304. Here the Debtors transferred their right, title, and interest in the tax refunds to the Firm for future legal services. Although Article 2 does not apply to this transaction for services (*see* K.S.A. 84–2–201), if this were an Article 2 transaction, it would be the transfer of title for a price.

43. K.S.A.2004 Supp. 84–9–309(a)(3).

44. K.S.A.2004 Supp. 84–9–318(a).

Therefore, in this opinion, no distinction will be made between the tax refunds and the cash deposit remaining on the date of filing.

■ Unfortunately, the word "retainer," even as used to describe transactions with attorneys, does not have an uniformly recognized meaning. As used in this opinion, retainer means property transferred to an attorney or law firm as advance payment against which fees and expenses will be charged after they are incurred. This meaning is distinguished from a "flat fee," sometimes referred to as a retainer, under which the lawyer agrees to do a specific task in exchange for payment to the attorney of a specified fee.[45] It is also distinguished from an "engagement retainer," which is a sum paid to the lawyer to assure the lawyer's availability to represent the client, not for legal services.[46] Both "flat fee" and "engagement retainers" are fully earned when paid to the attorney and need not be placed in a trust account. Finally, the word retainer has at times been confused with a "nonrefundable retainer" or a "minimum fee retainer," which is prohibited under the Kansas Rules of Professional Conduct.[47] Under such an arrangement, the fee is deemed immediately earned by the attorney and not placed in a trust account. The fee agreement provides that the fee will be retained upon termination of the representation, even if essentially no services are rendered, and additional fees will be charged if the value of the services exceeds the amount of the prepaid fee.[48]

■ In this case, the defendants have agreed that any excess funds remaining after the payment of fees and expenses from the retainer will be turned over to the Trustee, unless he abandons them to the Debtors. This construction of the retainer is required by Kansas law. Under Kansas law, a retainer held by an attorney for payment of fees may not be disbursed from the attorney's trust account to the attorney until the services are rendered and, upon termination of the representation, the attorney must refund to the client any excess advance payment.[49] The rules that govern attorneys' conduct, the Kansas Rules of Professional Conduct, indicate that an attorney can require advance payment of his or her fees.[50] Those rules require the attorney to hold property of clients or third persons that comes into the lawyer's possession in connection with a representation separate from the lawyer's own property and require that cash be placed in a trust account.[51] Even absent a retainer agreement, "[t]he lawyer is not required to remit to the client funds which the lawyer reasonably believes represent fees owed."[52] An agreement, such as a

---

45. Philip Ridenour, *Attorney Fees: Where Are We in Kansas?*, 73 J. Kan. B. Ass'n 6 (2004).

46. *In re Scimeca*, 265 Kan. at 759, 962 P.2d at 1091.

47. *Id.*

48. Philip Ridenour, *Attorney Fees: Where Are We in Kansas?*, 73 J. Kan. B. Ass'n 6 (2004).

49. *See In re Scimeca*, 265 Kan. at 759, 962 P.2d at 1091; Kan. R. Prof. Conduct. 1.16(d), 2004 Kan. Ct. R. Annot. 427.

50. *See* Kan. R. Prof. Conduct 1.5, Kansas Comment, 2004 Kan. Ct. R. Annot. 418 (stat-

ing lawyer not required to remit funds to client from which fee is to be paid); Kan. R. Prof. Conduct 1.16(d), 2004 Kan. Ct. R. Annot. 427 (on termination of representation, lawyer must refund any advance payment of fee that has not been earned).

51. Kan. R. Prof. Conduct 1.5, Kansas Comment, 2004 Kan. Ct. R. Annot. 418.

52. Model R. Prof. Conduct 1.15, Comment, Annot. R. of Prof. Conduct, 248 (Am. Bar Ass'n 5th Ed.2003).

retainer agreement or an assignment, may alter an attorney's duty to "promptly deliver to the client ... any funds or other property that the client ... is entitled to receive."[53] The attorney's duty to return an unearned retainer to the client arises only when the representation is terminated,[54] although "[i]f there is risk that the client may divert the funds without paying the fee, the lawyer is not required to remit the portion from which the fee is to be paid" until any dispute regarding fees is resolved.[55]

■ As argued by the Firm, when construed as a retainer, the assignment is similar to an escrow. There is an agreement between the Debtors and the Firm governing the property; when received, the tax refunds are to be deposited in the Firm's trust account, with transfer out of the account to the Firm conditioned on performing legal services or advancing expenses; and legal services must be performed or expenses advanced before the funds may be released. The Kansas Rules of Professional Conduct, examined above, provide safeguards. When an escrow exists, most courts hold that the assets in escrow are not property of the estate and the estate's interest is limited to the interest granted to the debtor by the escrow agreement.[56] Under Kansas law, the Debtors' interest in the retainer is limited to a contingent right to the return of any money remaining after the representation terminates and the Firm has been paid for all legal services it provided and any expenses it advanced. The interest of the estate is likewise a reversionary interest.

Section 329 supports the foregoing analysis. *Lamie* requires that § 329, not § 330, be applied when Chapter 7 counsel seeks payment from property which is not property of the estate.[57] Section 329 [58] addresses compensation already paid and compensation agreed to be paid. It imposes a "reasonable value" standard for the

53. Kan.R. Prof. Conduct 1.15(b), 2004 Kan. Ct. R. Annot. 414.

54. Kan. R. Prof. Conduct 1.16(d), 2004 Kan. Ct. R. Annot. 427.

55. Kan. R. Prof. Conduct 1.15, Kansas Comment, 2004 Kan. Ct. R. Annot. 418.

56. 5 *Collier,* ¶ 541.09A[2]; *see, e.g., In re ANR Advance Transportation Company, Inc.,* 247 B.R. at 774 (finding valid escrow and holding none of escrow funds were property of estate); *Dickerson v. Central Florida Radiation Oncology Group,* 225 B.R. 241 (M.D.Fla.1998) (holding funds debtor was required to deposit in segregated account were held in escrow and debtor's interest was limited to contingent remainder, which became property of estate bankruptcy filing); *Cedar Rapids Meats, Inc. v. Hager (In re Cedar Rapids Meats, Inc.),* 121 B.R. 562 (Bankr.N.D.Iowa 1990) (holding fund established to guarantee payment of worker's compensation claims was an escrow and not property of estate; debtor's interest was limited to contingency).

57. *See* 540 U.S. at 537–38, 124 S.Ct. at 1032.

58. 11 U.S.C.A. § 329 provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agree to be paid, if such a payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such Attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

court to apply and permits the court to require cancellation of the agreement and the return of any such payment to the extent the fees are excessive. If the property used for the payment of excessive fees would otherwise have constituted estate property, § 329(b)(1)(A) requires that such property be returned to the estate. This statute clearly recognizes that debtors may set aside property that would otherwise be estate property to pay for postpetition services.

The Trustee interprets the Debtors' acknowledged reversionary interest in the retainer to mean that the deposited funds remain the Debtors' property until the Firm earns fees to be charged against it. The Trustee's Kansas authorities are *In re Scimeca*[59] and *In re Hodes,*[60] which relied on *Scimeca.* The Court finds these authorities do not require it to hold that the cash retainer and the assigned tax refunds are property of the estate; only the estate's limited reversionary interest, not all interests in the cash and the refunds, became property of the estate.

*Scimeca* was a disciplinary case where the court considered whether an attorney violated the Kansas Rules of Professional Conduct by taking nonrefundable retainers and depositing them directly to his own account rather than to a trust account. The court held that because the fees were to be earned by future services and were not fees to commit the attorney to represent the client, the advance payment was subject to Rule 1.15, the trust account rule, and was in fact refundable if not fully earned. In so holding, the court indicated that a retainer to be earned by future services "remains the client's money."[61] But this dicta overstates the client's interest. In other parts of the opinion, the court recognized the fees in issue were refundable and that any funds which are the client's, either in whole or in part, must be placed in a trust account. The requirement to hold the money in the attorney's trust account until earned meant both the attorney and the client had an interest in it, but the court did not address the extent of either party's interest. *Scimeca* determined the applicability of ethical rules; it did not determine property interests. Further, to adopt the Trustee's construction of the ethical trust account requirement would turn the ethical rule requiring trust accounts, which protects clients,[62] into an instrument that harms clients by depriving them of a means to obtain postpetition representation in bankruptcy cases.

*Hodes,* on the other hand, which was a bankruptcy case, did address the estate's interest in a cash retainer that was not fully earned on the date of the order for relief.[63] The bankruptcy court held the

(2) the entity that made such payment.

59. 265 Kan. at 758–60, 962 P.2d at 1091.

60. *Rajala v. Hodes (In re Hodes),* 239 B.R. 239, 243 (Bankr.D.Kan.1999), *aff'd in part, rev'd in part,* 289 B.R. 5 (D.Kan.2003).

61. *In re Scimeca,* 265 Kan. at 759–60, 962 P.2d at 1091.

62. *In re Anonymous,* 698 N.E.2d 808, 809 (Ind.1998).

63. *In re Hodes,* 239 B.R. at 243. The *Hodes* bankruptcy court held that the cash retainer was subject to an attorney's retaining lien under K.S.A. 7–108, which secured the payment of both prepetition and postpetition fees, subject to court review under § 329. It therefore reached a result which the Trustee is opposing in this case. On appeal, the district court declined to review the holding that the retainer was property of the estate because the debtors had not filed a cross appeal. However, it reversed the holding that § 329 was applicable, finding that because the retainer was property of the estate, even though subject to a lien, § 330 controlled court review of attorney fees to be paid to the debtors' counsel from the funds. The case was re-

retainer to be property of the estate, but did so based on a reading of *Scimeca* which this Court does not adopt.

At least three courts applying other states' laws have reached conclusions supporting the Trustee's position that a retainer transferred prepetition by a Chapter 7 debtor to an attorney from which postpetition fees and expenses are to be paid constitutes property of the estate.[64] Two of these courts concluded that when the client retains any interest in a prepetition retainer intended to pay for the attorney's future services, the attorney holds the retainer in trust as security for the payment of fees, and the retainer becomes property of the estate to the extent fees have not been earned prepetition.[65] The third court held the retainer became property of the estate except to the extent it paid for prepetition services, because the attorney had failed to sustain his burden to prove he was paid a "classic, nonrefundable, flat fee retainer."[66] All three courts said attorney fees could be paid from property of the estate only to the extent they met the requirements of § 330,[67] but after *Lamie,* a Chapter 7 debtor's attorney does not qualify for compensation under that provision.

This Court finds these cases distinguishable. In this case, there is an absolute assignment of the tax refunds to the Firm. The assignment is not an agreement for the Firm to hold the Debtors' money as

their agent; it is a transfer of the Debtors' right, title, and interest in the property. The Debtors' potential reversionary interest is not a partial interest in the entire retainer; it is a full interest in an undetermined portion of the property. Money held by the Firm is not collateral securing the Debtors' obligation in case the Debtors default on their obligation to pay. The Firm need not foreclose on the Debtors' interest in the trust account before transferring the money to its own account. The money cannot be used for any purpose other than paying the Firm's fees and expenses, unless the representation is terminated.[68] Further, the Court notes that at least some courts from other jurisdictions which have found retainers to be property of the estate have also said that the attorneys could be paid for postpetition services from the retainer under § 330.[69] Now that *Lamie* has held that § 330 does not allow a Chapter 7 debtor's counsel to be paid for postpetition services from property of the estate (unless hired by the Chapter 7 trustee and approved by the court), the courts so holding may wish to more carefully consider the property interests which arise when debtors transfer property prepetition for payment of postpetition services.

As urged by the Trustee, the combined effect of *Lamie* and a conclusion that assigned tax refunds (or other property giv-

manded to this Court for further proceedings, but the parties settled the case before the Court decided any of the remaining issues.

64. *E.g., In re Equipment Servs., Inc.,* 290 F.3d at 746–47 (Virginia law); *In re Mondie Forge Co.,* 154 B.R. at 236–39 (Ohio law); *In re McDonald Bros. Construction, Inc.,* 114 B.R. 989, 999–1000 (Bankr.N.D.Ill.1990) (Illinois law).

65. *Equipment Servs.,* 290 F.3d at 746–47; *McDonald Bros. Constr.,* 114 B.R. at 999–1000.

66. *Mondie Forge,* 154 B.R. at 237–38.

67. *Equipment Servs.,* 290 F.3d at 746–47; *Mondie Forge,* 154 B.R. at 237; *McDonald Bros. Constr.,* 114 B.R. at 993–94.

68. The Kansas legislature's intent to assure that retainers be used to pay attorney fees is reflected in the statutory attorney lien provision, K.S.A. 7–108.

69. *E.g., Mondie Forge,* 154 B.R. at 232; *McDonald Bros. Constr.,* 114 B.R. at 1000.

en as a retainer) are property of the estate would be to preclude Chapter 7 debtors from using property they own prepetition to pay for postpetition attorney fees. However, in *Lamie*, the Supreme Court expressed the view that the sound functioning of the bankruptcy system would not be impaired by its holding that Chapter 7 debtors' counsel cannot be paid from estate property under § 330.[70] The Court suggested the Bankruptcy Code anticipates that Chapter 7 debtors will pay their attorneys in advance, citing § 329,[71] which addresses agreements between debtors and their lawyers for services rendered both before and after the entry of an order for relief. This Court's analysis that the tax refunds are not property of the estate is consistent with the Supreme Court's stated intention not to impair the functioning of the bankruptcy system, and with the plain language of § 329.

If § 541 (or other Code provisions on which a trustee might rely to recover a retainer for the benefit of the estate) prevents debtors from making prepetition arrangements to pay reasonable postpetition attorney fees in Chapter 7 cases, initial representation would need to be limited to prepetition services and new representation secured postpetition with payment to

be made only from postpetition assets. As discussed above, this would be problematic. There is the question whether attorneys can ethically limit representation to prepetition matters.[72] In addition, few debtors have sufficient resourcefulness and income in the first few weeks after filing for bankruptcy to retain and assure payment of counsel at the critical initial stages of a Chapter 7 proceeding. Postpetition representation should not be limited to those debtors fortunate enough to have relatives who can provide money for a retainer or have sufficient postpetition income to pay not only their living expenses and reaffirmed debts, but also ongoing attorney fees. Debtors should not be prohibited from providing a retainer, creating an "escrow," or otherwise establishing a fund which cannot be recovered by the Trustee to pay postpetition legal fees and expenses. Section 329 should be sufficient to remedy any abuses of such arrangements.

In conclusion, under Kansas law, after the assignment of the tax refunds and cash, the Debtors' interest in the retainer was limited to a right to the return of any portion that remains after paying the reasonable value of the services and expenses

---

**70.** 540 U.S. at 537–38, 124 S.Ct. at 1032.

**71.** *Id.*

**72.** *See Egwim*, 291 B.R. at 569–574; *Castorena*, 270 B.R. at 504. Rule 1.1 of the Kansas Rules of Professional Conduct requires the lawyer to provide competent representation (2004 Kan. Ct. R. Ann. 342), Rule 1.2(c) permits limiting "the objectives of the representation if the client consents after consultation" (2004 Kan. Ct. R. Ann. 350), and Rule 1.4(b) requires the lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation," (2004 Kan. Ct. R. Ann. 367). Together, these rules indicate the lawyer would have to explain everything that could happen in the client's Chapter 7

bankruptcy case that might require the lawyer's postpetition help in order to obtain the client's valid consent to terminate the representation with the filing of the petition. In addition, Rule 1.7(b) provides: "A lawyer shall not represent a client if the representation of that client may be materially limited ... by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation" (2004 Kan. Ct. R. Annot. 391), so to avoid running afoul of this rule, the lawyer would have to be satisfied the client either could hire an attorney postpetition to provide the necessary services or would be capable of competently proceeding without legal assistance.

the Firm provides. As assignee, the Firm holds full ownership of the retainer, subject to the contingent right of reversion required by the Kansas Rules of Professional Conduct. The entire interest in the fund did not pass to the estate; the estate's interest was limited to the Debtors' contingent reversionary interest, which may or may not mature into full ownership of a portion of the funds. The bankruptcy estate received no greater right than the Debtors had, under Kansas law, to possess and use the refunds.[73]

The Trustee is denied summary judgment on count I of his Complaint, and the defendants are granted summary judgment on their contention that the retainer is not property of the estate.

## III. In this Chapter 7 Case, Transactions Between Debtors and their Counsel Are Governed by § 329, not § 330.

The Firm seeks summary judgment on its contention that § 329 applies to its entitlement to fees and expenses for prepetition and postpetition services. Indeed, *Lamie* recognizes § 329, not § 330, is applicable when Chapter 7 counsel seeks fees from property which is not property of the estate.[74] "[T]he *Lamie* decision should not prevent debtors from providing their attorneys reasonable compensation, subject to disclosure and court review under section 329, for the capable prosecution of their cases." [75]

▌ Because, as discussed above, this Court holds that the assigned tax refunds do not constitute property of the estate, § 329 is the appropriate provision of the Code for court review of attorney fees to be paid to the Firm for work on behalf of the Debtors. The Trustee's argument that § 330 applies and bars payment of the Firm's fees from the retainer is based on *Lamie* and is premised on the contrary conclusion that the tax refunds assigned to the Firm constitute property of the estate. The Firm is granted summary judgment on its contention that § 329 applies to its entitlement to have its prepetition and postpetition fees and expenses paid from the retainer.

In the Court's view, § 329 adequately protects creditors from any possible abuses that might result from the often close relationship between debtors and their counsel. It allows for cancellation of fee agreements (presumably including associated retainers) and recovery of fees paid when the compensation exceeds the reasonable value of the services provided. The property recovered is returned to the estate if but for its transfer to counsel, it would have been estate property.

▌ Further, the Court notes that in the context of enforcing a prepetition retainer agreement, the reasonable fee limitation of § 329 addresses the same concerns as do § 365, the executory contract section, and § 548, the fraudulent transfer section. If the latter provisions, which contain no exception for Chapter 7 retainer agreements, apply to Chapter 7 debtors' prepetition contracts with their bankruptcy attorneys, they would give trustees other legal arguments, in addition to the property of the estate contention, to set aside retainer agreements. If the issue were presented, this Court would likely hold that the reasonableness standard of § 329 controls the propriety of paying Chapter 7

---

73. *See, e.g., Integrated Solutions v. Service Support Specialties*, 124 F.3d at 492–93 (property interest that passes to bankruptcy estate is subject to same limitations imposed on debtor by applicable nonbankruptcy law).

74. 540 U.S. at 538, 124 S.Ct. at 1032.

75. 3 *Collier*, ¶ 330.03[3][a] at 330–25.

debtors' attorneys postpetition fees from a prepetition retainer, to the exclusion of §§ 365 and 548.

Section 365(a) provides, with certain exceptions not applicable here, that a Chapter 7 trustee "may assume or reject any executory contract" of the debtor. The Bankruptcy Code contains no definition of "executory contract," but the courts generally accept the view that in this provision, it means a contract that remains materially unperformed on both sides.[76] As explained earlier, a Chapter 7 debtor's attorney taking a prepetition retainer certainly must provide the debtor at least some postpetition performance under the contract for legal representation. It may be less obvious, especially when the debtor has paid prepetition for the postpetition representation, but the debtor also has the obligation to make important decisions, to cooperate, and otherwise to help the attorney provide the representation. So, if the issue were presented, many courts would probably feel compelled to hold that the debtor's prepetition contract with the attorney would be covered by the usual definition of "executory contract" and therefore subject to § 365. Under § 365(d)(1), any executory contract a Chapter 7 trustee does not assume or reject within 60 days after the order for relief (or within any extension of time granted by the court) "is deemed rejected." Of course, a Chapter 7 trustee would have no reason to assume a debtor's contract with his or her bankruptcy attorney, because personal legal representation of the debtor could almost never provide any benefit to the bankruptcy estate. Instead, by rejecting the contract

immediately, the trustee could bring money into the estate by recovering any prepetition retainer the attorney had not yet earned by providing postpetition services.

Section 548(a) authorizes the trustee to avoid a debtor's prepetition transfer for "less than a reasonably equivalent value," if one of three circumstances existed at the time of the transfer. Since one of the circumstances is that the debtor was insolvent when the transfer was made or became insolvent as a result of the transfer, retainers paid prepetition to attorneys for Chapter 7 bankruptcy representation will nearly always be avoidable if the transfer is considered to be for less than reasonably equivalent value. For purposes of § 548, "value" is defined in such a way that executory promises have frequently been held not to qualify.[77] The consideration a debtor receives for a prepetition retainer given to pay for postpetition representation is arguably an executory promise. If § 548(a) applies to attorneys' retainer agreements, then many (or perhaps all) of them will be vulnerable to attack as constructively fraudulent transfers to the extent the retainers were paid prepetition and were intended to be applied to postpetition fees.

▇▇ The Court is convinced that Congress must have intended for § 329 to be the only Code provision that allows courts to set aside or modify Chapter 7 debtors' retainer agreements for prepetition and postpetition legal representation, and that the Code should be construed to reflect this intent.[78] Unlike §§ 365 and 548,

---

76. *See* 3 *Collier,* ¶ 365.02[1].

77. *See* § 548(d)(2)(A) (defining "value" to mean "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor"); 5 *Collier,* ¶ 548.05[1][b]

at 548–39 to –40 (asserting definition excludes executory promise, but noting cases have sometimes held one to be sufficient).

78. If, on the other hand, the broad, general provisions of §§ 365 and 548 apply to Chapter 7 debtors' retainer agreements, these

§ 329 of the Bankruptcy Code explicitly deals with debtors' transactions with attorneys. This statute is broad and expressly applies to Chapter 7 debtors' contracts with their attorneys, and to the postpetition payment of attorney fees from non-estate property. It provides authority to the courts to cancel such a contract, which is similar to rejection of an executory contract. It allows courts to find the compensation such a contract promises to the attorney to be unreasonable and to return to the estate the property transferred to the attorney, which is similar to the recovery of a fraudulent transfer.

The defendants' request for summary judgment on their claim that § 329 controls the Firm's ability to charge its post-petition fees and expenses against the retainer is granted.

## IV. The Court's Construction of §§ 541 and 329 Promotes the Public Policy of Preserving the Integrity of the Bankruptcy System.

Public policy is served by the Court's conclusion that the retainer is not property of the estate under § 541 and that § 329 controls Chapter 7 debtors' retainer contracts with their bankruptcy attorneys to the exclusion of §§ 365 and 548. Debtor representation in postpetition matters is essential to a fair and equitable application of Chapter 7 and facilitates the bankruptcy process. Creditors as well as debtors benefit when bankruptcy proceedings are orderly, and the debtors are represented by counsel with knowledge of the Code and case law authority. As one commentator has remarked:

> It is fair to say that preserving the integrity of the bankruptcy system includes encouraging, not discouraging, excellence in representation of consumer debtors. The efficient and honest functioning of the bankruptcy system requires a robust, confident and motivated debtors' bar.
>
> The system cannot have it both ways. Finding and inventing devices to prevent lawyers from being paid will not encourage excellence in the practice of law. All participants in the system should undertake to help craft legal and practical ways to compensate lawyers for their work on behalf of consumer debtors.[79]

The Court agrees with these observations. The bankruptcy system needs a robust, confident, and motivated debtors' bar. This Court enjoys such a bar, and it is worthy of protection.

statutes could be used by the trustee to undermine the standard of § 329 that such contracts be enforced unless the fees are unreasonable. When statutes present such conflicts, a common rule of statutory construction is to declare that the specific statute controls over the general one. *Shawnee Tribe v. United States*, 423 F.3d 1204, 1213 (10th Cir.2005). This appears to be one of those rare situations where the literal application of §§ 365 and 548 would be "demonstrably at odds" with Congress's intent or would produce an "absurd result." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' [Citation omitted.] In such cases, the intention of the drafters, rather than the strict language, controls. [Citation omitted.]"). Congress must have intended Chapter 7 debtors' retainer agreements with their attorneys for bankruptcy representation to be governed by § 329, the one provision that expressly and specifically applies only to debtors' contracts with their attorneys.

**79.** King, *Between the Charybdis of Biggar and the Scylla of Lamie*, Norton Bankr.L. Adv., June 2004 at 2.

## V. The Trustee Is Not Entitled to Turnover of the Tax Refunds Pursuant to § 542(a).

In count IV of the Complaint, the Trustee prays for turnover and accounting of the tax refunds under § 542. As relevant here, it provides:

> (a) ... [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title ..., shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

The operative subsection of § 363, subsection (b)(1), provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." So a prerequisite for recovery by the trustee under § 542(a) is that the property be property of the estate. This Court has previously held that the tax refunds are not property of the estate; the Trustee is not entitled to turnover pursuant to § 542(a).

The Trustee's motion for summary judgment on count IV is denied.

## CONCLUSION.

For these reasons, the Court denies the Trustee's motion for summary judgment on counts I and IV of his Complaint, and grants the defendants' motion for summary judgment on their contentions that the retainer is not property of the estate and that § 329 governs the enforcement of the retainer agreement. The Court retains jurisdiction to determine the remaining counts alleged in the complaint.